## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN LUCAS,<br><br>       Plaintiff,<br><br> v.<br><br>CARFAX, INC.,<br><br>       Defendant. | Case No. 8:25-cv-00632-JRR |

## DEFENDANT CARFAX, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

I.    INTRODUCTION ........................................................................1

II.   RELEVANT STATUTORY BACKGROUND .............................................3

      A.    The DPPA's Legislative History Confirms that the DPPA Does
            Not Limit Access to Crash Reports. ..........................................3

      B.    The DPPA's Scope and Structure Do Not Restrict Distribution
            of Crash Reports. ...............................................................5

      C.    Maryland's Public Safety Law Authorizes the State Police to
            Disseminate Motor Vehicle Crash Reports, Including Through
            CARFAX. ..........................................................................6

III.  PLAINTIFF'S COMPLAINT .........................................................7

IV.   LEGAL STANDARD ...................................................................9

V.    ARGUMENT.............................................................................9

      A.    The Complaint Should Be Dismissed Because CARFAX Never
            Obtained or Disclosed Information from a Motor Vehicle
            Record............................................................................10

            1. Plaintiff's License and Registration Are Not Motor Vehicle Records
            from Which CARFAX Obtained or Disclosed Information. ..............10

            2. .....The Crash Report Is Not a Motor Vehicle Record Because It Was
            Not Maintained By or Obtained From a DMV. ...............................11

      B.    The Complaint Should Also Be Dismissed Because Plaintiff
            Has Not, and Cannot, Sufficiently Allege That CARFAX Had
            an Impermissible Purpose. ..................................................16

      C.    The Complaint Should Additionally Be Dismissed Because
            Plaintiff Has Not Plausibly Alleged, and Cannot Plausibly
            Allege, Disclosure of Personal Information........................................19

VI.   CONCLUSION............................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Sirius XM Radio Inc.*,
  932 F.3d 1253 (9th Cir. 2019) .............................................................................2, 12, 13, 14

*Arkansas State Police v. Wren*,
  491 S.W.3d 124 (Ark. 2016).........................................................................................15, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................9, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................9, 20

*Bourgeois v. Live Nation Ent., Inc.*,
  3 F.Supp.3d 423 (D. Md. 2014) ............................................................................................9

*Davis v. Trans Union LLC*,
  No. 1:24-cv-02338-JRR, 2025 WL 886173 (D. Md. Mar. 21, 2025) (Rubin, J.).....................9

*Durham v. City of Charlotte*,
  No. 3:21-cv-00638-RJC-DSC, 2024 WL 4279513 (W.D.N.C. Sept. 24, 2024)...............15, 16

*Evans v. 7520 Surratts Rd. Operations, LLC*,
  No. 8:21-cv-01637-PX, 2021 WL 5326463 (D. Md. Nov. 16, 2021) .......................................9

*Fontanez v. Skepple*,
  563 F.App'x 847 (2d Cir. 2014) .............................................................................12, 15, 17

*Garey v. James S. Farrin, P.C.*,
  35 F.4th 917 (4th Cir. 2022). As to the Crash Report, Plaintiff.............................2, 11, 12, 16

*Gaston v. LexisNexis Risk Sols., Inc.*,
  483 F.Supp.3d 318 (W.D.N.C. 2020) ............................................................................15, 16

*Graczyk v. W. Pub. Co.*,
  660 F.3d 275 (7th Cir. 2011) .................................................................................................17

*Keogh v. Meta Platforms, Inc.*,
  680 F.Supp.3d 601 (D.S.C. 2023).........................................................................................21

*Maracich v. Spears*,
  570 U.S. 48 (2013)...................................................................................................3, 10, 13

*Maracich v. Spears,*
    675 F.3d 281 (4th Cir. 2012) .................................................................................2, 10

*Mattivi v. Russell,* No. 01-cv-00533, 2002 WL 31949898 (D. Colo. Aug. 2, 2002)...............15, 21

*McClatchy Co. v. Town of Chapel Hill, N. Carolina,*
    657 F.Supp.3d 769 (M.D.N.C. 2023) .................................................................................16

*Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009) .................................................................................9, 20

*New Richmond News v. City of New Richmond,*
    881 N.W.2d 339 (Wisc. App. 2016) .................................................................................2, 18, 19

*O'Brien v. Quad Six, Inc.,*
    219 F.Supp.2d 933 (N.D. Ill. 2002) .................................................................................12

*Reno v. Condon,*
    528 U.S. 141 (2000).................................................................................13

*Ruffin v. Lockheed Martin Corp.,*
    126 F.Supp.3d 521 (D. Md. 2015).................................................................................9

*Russell v. Choicepoint Servs., Inc.,*
    302 F.Supp.2d 654 (E.D. La. 2004) .................................................................................17

*Siegler v. Best Buy Co. of Minnesota,*
    519 F.App'x 604 (11th Cir. 2013) .................................................................................12, 13, 15

*Taylor v. Acxiom Corp.,*
    612 F.3d 325 (5th Cir. 2010) .................................................................................17

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.,*
    525 F.3d 1107 (11th Cir. 2008) .................................................................................10

*Whitaker v. Appriss, Inc.,*
    266 F.Supp.3d 1103 (N.D. Ind. 2017) .................................................................................14, 15

**Statutes**

18 U.S.C. § 2721(a) .................................................................................3, 5, 12

18 U.S.C. § 2721(b) ................................................................................. *passim*

18 U.S.C. § 2721(c) .................................................................................17

18 U.S.C. § 2722 .................................................................................6

18 U.S.C. § 2723.................................................................................6

18 U.S.C. § 2724 .......................................................................................1, 2, 3, 6, 10

18 U.S.C. § 2725(1) .......................................................................................1, 5, 13

18 U.S.C. § 2725(3) .......................................................................................3, 5, 10

Md. Code, Pub. Safety § 2-204(b)(16)(i)...............................................................7

Md. Code, Pub. Safety § 2-306(a) ...................................................................18, 19

Md. Code, Pub. Safety § 2-308(b)(4) ...........................................................7, 18, 19

Privacy Act of 1974, 5 U.S.C. § 552a ..................................................................13

Wis. Stat. § 346.70(4)(f) ......................................................................................19

**Other Authorities**

139 Cong. Rec. S15745-01, 1993 WL 470986 (Nov. 16, 1993) ...................................4

140 Cong. Rec. H2518-01, 1994 WL 140035 (Apr. 20, 1994) ......................4, 5, 15, 21

*Protecting Drivery Privacy: Hearings on H.R. 3365 Before the Subcomm. on*
  *Civil and Constitutional Rights of the House Comm. on the Judiciary*, 103d
  Cong., 2d Sess., 1994 WL 212698 (Feb. 3, 1994)..........................................4, 13

Md. Code Regs. 29.02.02.01......................................................................................7

Federal Rules of Civil Procedure Rule 12(b)(6) ..................................................1, 3, 9

Defendant CARFAX, Inc. ("CARFAX") respectfully moves the Court for an order under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiff Benjamin Lucas ("Plaintiff")'s Complaint, ECF No. 1, with prejudice.

## I.    **INTRODUCTION**

Plaintiff's Complaint is an improper attempt to weaponize the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–25 ("DPPA"), to attach civil liability and liquidated statutory damages to lawful activity that Congress never intended to regulate. Specifically, the statute's legislative history and plain text make clear that Congress exempted from the DPPA's scope the distribution of motor vehicle accident reports by law enforcement agencies and their designees. Plaintiff nevertheless ignores the text of the DPPA, its legislative history, and DPPA precedent in an effort to nullify the intent of Congress and the explicit statutory provisions that protect the common business practices alleged in the Complaint.

The DPPA prohibits state departments of motor vehicles ("DMVs"), and their resellers, from disclosing certain "personal information" from "motor vehicle records" unless there is a permissible purpose for the disclosure. To state a DPPA claim, the burden is on Plaintiff to plausibly allege that CARFAX "[1] knowingly [2] obtains, discloses or uses [3] personal information, [4] from a motor vehicle record, [5] for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). Here, the Complaint fails to plausibly allege the required elements of a DPPA claim. The Court should dismiss the Complaint with prejudice for the following independently dispositive reasons:

***First***, Plaintiff has not plausibly alleged, and cannot plausibly allege, that CARFAX obtained or disclosed personal information from a "motor vehicle record." 18 U.S.C. §§ 2724(a), 2725(1). Plaintiff alleges that his license and registration are motor vehicle records. But Plaintiff then asserts that CARFAX obtained information from a motor vehicle accident report (defined as

a "Crash Report"), which Plaintiff admits CARFAX obtained from law enforcement, not a state DMV. Compl. ¶¶ 3, 22. Under Fourth Circuit precedent, even if CARFAX were to obtain or disclose information that can be traced back to a license or registration, this is insufficient to support a DPPA claim because CARFAX did not obtain information directly from Plaintiff's license or registration. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 925–27 (4th Cir. 2022).

With respect to the Crash Report, as all three federal Courts of Appeals to address the issue have held, the definition of "motor vehicle record" is limited to records obtained from a DMV. *See, e.g.*, *Andrews v. Sirius XM Radio Inc*., 932 F.3d 1253, 1260 (9th Cir. 2019). Plaintiff's Complaint ignores the narrow reach of the DPPA by attempting to impose liability for CARFAX's alleged disclosure of information obtained from law enforcement agencies, ***not*** from a DMV. *See* Compl. ¶ 21. A contrary conclusion would lead to absurd results and obliterate the distinction Congress made between DMV records and other public records, such as motor vehicle accident reports.

***Second***, Plaintiff has not plausibly alleged, and cannot plausibly allege, disclosure to or from CARFAX for any impermissible purpose. 18 U.S.C. §§ 2721(b), 2724(a). As the Fourth Circuit has held, Plaintiff has the burden to allege and prove the existence of an impermissible purpose. *See Maracich v. Spears*, 675 F.3d 281, 299 (4th Cir. 2012). But Plaintiff's allegations simply recite this element of the DPPA; Plaintiff fails to allege any facts supporting an impermissible purpose by CARFAX or any third party. *See, e.g.*, Compl. ¶ 45. Moreover, a proper purpose under the DPPA includes any use authorized by state law for public safety, *see, e.g.*, *New Richmond News v. City of New Richmond*, 881 N.W.2d 339, 342 (Wisc. App. 2016), and a Maryland statute explicitly authorizes disclosure of motor vehicle crash reports like the Crash Report. *See* 18 U.S.C. § 2721(b)(14); Md. Code, Pub. Safety § 2-306(a).

- 2 -

***Finally***, Plaintiff has not plausibly alleged, and cannot plausibly allege, disclosure of "personal information" as required to state a claim. 18 U.S.C. §§ 2724(a), 2725(3). The Complaint contains no allegations as to what individually-identifying information of Plaintiff was allegedly disclosed by the alleged sale of his Crash Report. Further, the DPPA expressly excludes information "on vehicular accidents" from the definition of personal information. 18 U.S.C. § 2725(3). The Crash Report is alleged to be information on a vehicular accident. Compl. ¶ 3 (defining Crash Report as a "police accident report"). Thus, the Crash Report, including any individually-identifying information contained therein, is alleged to be information on a vehicular accident and thus not "personal information" subject to the DPPA.

For each of these independent reasons, the Court should dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    RELEVANT STATUTORY BACKGROUND

### A.  The DPPA's Legislative History Confirms that the DPPA Does Not Limit Access to Crash Reports.

The DPPA governs the sale and resale of certain "personal information" from "motor vehicle records." 18 U.S.C. § 2721(a). Following the murder of an actress in 1989 by a stalker who had obtained her unlisted home address through the California DMV, Congress enacted the DPPA as part of the Violent Crime Control and Law Enforcement Act of 1994. The DPPA was intended to protect drivers from violent criminals, as well as abusive direct marketing and solicitation practices. *See, e.g.*, *Maracich v. Spears*, 570 U.S. 48, 57 (2013). While Congress sought to limit the use of motor vehicle records by criminals and marketers, Congress aimed to "strike a critical balance" to preserve the ability of others to continue using motor vehicle records for common practices. 140 Cong. Rec. H2518-01, H2522–23, 1994 WL 140035 (Apr. 20, 1994) (statement of Rep. Moran) ("[I]nsurance companies, law enforcement professionals, attorneys, and

all other authorized users would continue to have access to [personal information in DMV records].”); *see, e.g.*, *Protecting Driver Privacy*, 1994 WL 212698 (“Careful consideration was given to the common uses now made of this information and great efforts were made to ensure that those uses were allowed under this bill.”).  Indeed, the Congressman who introduced the DPPA, Representative Jim Moran, stressed that he wanted to ensure that “***Carfax***,” and other businesses, ***had*** “***no impediments*** to their receipt of DMV information that is necessary and essential for them to do business.”  *Protecting Driver Privacy*, 1994 WL 212698 (emphasis supplied).

One common practice Congress intended to remain unaffected by the DPPA was third parties obtaining a driver’s driving record, including Crash Reports.  *See, e.g.*, 140 Cong. Rec. H2518-01, H2523, 1994 WL 140035 (Apr. 20, 1994) (statement of Rep. Moran) (“It is very important to note that the [DPPA] in no way affects access to accident information about the car or driver.  Nothing in this bill would stop anyone from finding out another person’s driving record, accidents, or status.”); *id.* at H2527 (statement of Rep. Goss) (“The Driver’s Privacy and Protection Act states that access to all information on vehicular accidents, driving violations, and a driver’s record will not be limited.”); 139 Cong. Rec. S15745-01, S15764, 1993 WL 470986 (Nov. 16, 1993) (statement of Sen. Boxer) (“[Personal information] does not include information on a driver’s accidents, violations or status.  Let me repeat that.  Nothing in this bill will stop the press, insurance companies, employers, or anyone else from obtaining information about an individual’s driving record.”).

As part of protecting the viability of common practices, Congress recognized there was a “key difference between DMV records and other public records” and drafted the DPPA such that it “applies only to specified categories of personal information contained in motor vehicle records.

- 4 -

*It does not apply to any other systems of public records maintained by States or local governments*." 140 Cong. Rec. H2518-01, H2523–24, 1994 WL 140035 (Apr. 20, 1994) (statement of Rep. Edwards) (emphasis supplied).

**B. The DPPA's Scope and Structure Do Not Restrict Distribution of Crash Reports.**

Section 2721(a) of the DPPA generally prohibits a "[s]tate department of motor vehicles" and its agents from disclosing certain "personal information" as defined in the statute. 18 U.S.C. § 2721(a). "[P]ersonal information" as used in the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, *but does not include information on vehicular accidents*, *driving violations, and driver's status*." 18 U.S.C. § 2725(3) (emphasis supplied). The DPPA's restrictions are limited to personal information in "motor vehicle records." 18 U.S.C. § 2721(a). "'[M]otor vehicle record' means *any record* that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card *issued by a department of motor vehicles*." 18 U.S.C. § 2725(1) (emphasis supplied).

Section 2721(b) provides fourteen "permissible use" exceptions to Section 2721(a) for which personal information may be disclosed by a state DMV. 18 U.S.C. § 2721(b)(1)–(14). Included among these enumerated permissible use exceptions are:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions[;]
>
> (2) For use in connection with matters of motor vehicle or driver safety and theft . . .
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding . . .

- 5 -

18 U.S.C. § 2721(b)(1), (2), (4).  Significantly, there is also a catch-all permissible use category for state action, allowing "***any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety***."  18 U.S.C. § 2721(b)(14) (emphasis supplied).

The DPPA allows that "an authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under [18 U.S.C. § 2721(b)]."  Conversely, Section 2722 prohibits non-governmental persons from knowingly obtaining or disclosing "personal information," from a "motor vehicle record," for any use not permitted under 18 U.S.C. § 2721(b).  *See* 18 U.S.C. § 2722.  Besides the authority vested in the U.S. Attorney General,[1] the DPPA provides a limited cause of action against a person who "[1] knowingly [2] obtains, discloses or uses [3] personal information, [4] from a motor vehicle record, [5] for a purpose not permitted under this chapter."  18 U.S.C. § 2724(a).

### C.  Maryland's Public Safety Law Authorizes the State Police to Disseminate Motor Vehicle Crash Reports, Including Through CARFAX.

By operation of state law, the Maryland Department of State Police—not the Maryland Department of Transportation Motor Vehicle Administration ("MVA")—has the power to establish systems for "receiving, processing, and maintaining[] reports and records of occurrences or alleged occurrences of crime and motor vehicle accidents in the State."  Md. Code, Pub. Safety § 2-204(b)(16)(i); *see also Central Records Division*, Md. Dep't of State Police, https://mdsp.maryland.gov/Organization/Pages/SupportServicesBureau/CentralRecordsDivision.aspx (last visited Mar. 29, 2025) ("The [Department of State Police] Central Records Division is

---

[1] Under the DPPA, the U.S. Attorney General may bring an enforcement action for the mismanagement of driver's license information, and only in instances in which a State department of motor vehicles has a "policy or practice of substantial noncompliance with [the DPPA]."  18 U.S.C. § 2723(b).

the state's central repository for the collection, analysis, and distribution of motor vehicle crash reports and crime statistics.  This information is mandated under Public Safety Article 2 of the Annotated Code of Maryland.").  Maryland law also specifically authorizes, and indeed requires, the Department of State Police to "disseminate information about the occurrence of motor vehicle accidents in the State."  Md. Code, Pub. Safety § 2-306(a).  Consistent with this framework, the Secretary of Maryland State Police "may establish conditions under which reports of specific motor vehicle accidents may be made available on request to the public."  Md. Code, Pub. Safety § 2-308(b)(4); *see also* Md. Code Regs. 29.02.02.01 (Maryland State Police regulations regarding dissemination of Crash Reports).

Under the authority of the State Police, Maryland law enforcement agencies contract with CARFAX as a way to distribute Crash Reports in compliance with state law.  *See, e.g.*, *Police Reports*, Prince George's County,  https://www.princegeorgescountymd.gov/departments-offices/police/online-services/mpia-foia-requests/police-reports ("Accident Reports are available 24/7 on . . . Crashdocs.org for a fee of $10."); Compl. ¶ 2 (alleging CARFAX works with "every U.S. state and the District of Columbia, as well as more than 5,000 police departments across the country;" "reports are available to purchase from Carfax through various websites, including but not limited to www.crashdocs.org.").

III.    **PLAINTIFF'S COMPLAINT**

The Complaint pleads a single claim against CARFAX for purported violation of the DPPA.  *Id.* ¶¶ 37–50.  Plaintiff alleges that he was involved in an accident in Maryland on December 4, 2023.  Compl. ¶ 20.  He alleges that an unspecified law enforcement officer investigated the accident and used Plaintiff's license and registration to collect his driver's license number and home address.  *Id.* ¶ 21.  Plaintiff asserts, without any supporting facts, that the law enforcement officer "transmitted the collected information to the MVA for the purpose of creating

- 7 -

a Crash Report" of Plaintiff's accident and then the MVA "transmitted the Crash Report back to the investigating officer's law enforcement agency." *Id.* Plaintiff also goes on to contend that CARFAX "purchased the Crash Report about Plaintiff's accident ***from the investigating officer's law enforcement agency***." *Id.* ¶ 22 (emphasis supplied). The Complaint is devoid of any allegations however that CARFAX obtained the Crash Report—or any other records—from the MVA. *See generally id.* ¶¶ 21–22.

Plaintiff alleges, without any supporting facts, that CARFAX offers "police reports relating to motor vehicle accidents" for purchase "through various websites, including but not limited to www.crashdocs.org and www.CarfaxForClaims.com," *id.* ¶ 2, and that CARFAX sells such reports for its own commercial gain, *id.* ¶ 4. Plaintiff's Complaint contains a series of allegations made "upon information and belief" about CARFAX's alleged sale of Plaintiff's Crash Report. *Id.* ¶¶ 22–24. According to Plaintiff, CARFAX allegedly: (i) "sold the Crash Report and its contents to third parties within the last four years," (ii) "sold the Crash Report about Plaintiff's accident to purchasers that were not permitted under the DPPA to possess the personal information therein," and (iii) "failed to make a reasonable inquiry as to whether the Crash Report about Plaintiff's accident would be used by third-party purchasers only for an authorized purpose under the DPPA." *Id.*

However, the Complaint does not identify any third-party purchaser of Plaintiff's Crash Report from CARFAX, nor for what purpose any alleged purchase was effectuated. *See generally id.* Plaintiff only alleges that CARFAX "failed to make a reasonable inquiry" as to the purchaser's purposes, but there are no allegations as to CARFAX's inquiry procedure. *Id.* ¶ 24. Finally, the Complaint also fails to allege that Plaintiff's "personal information" was contained in the Crash Report. *See generally id.*

- 8 -

## IV.  **LEGAL STANDARD**

Under Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient."  *Davis v. Trans Union LLC*, No. 1:24-cv-02338-JRR, 2025 WL 886173, at *2 (D. Md. Mar. 21, 2025) (Rubin, J.) (dismissing complaint) (quoting *Bourgeois v. Live Nation Ent., Inc.*, 3 F.Supp.3d 423, 434 (D. Md. 2014)).  Consistent with this framework, "[t]he [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief."  *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-cv-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (dismissing complaint) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F.Supp.3d 521, 526 (D. Md. 2015)).  The complaint must contain more than the elements of a cause of action and "bare assertions devoid of further factual enhancement."  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (affirming dismissal).

## V.  **ARGUMENT**

The DPPA provides a cause of action against a person who "[1] knowingly [2] obtains, discloses or uses [3] personal information, [4] from a motor vehicle record, [5] for a purpose not permitted under this chapter."  18 U.S.C. § 2724(a).  The Complaint suffers from numerous deficiencies, each of which independently requires dismissal with prejudice of Plaintiff's DPPA claim.  ***First***, Plaintiff has not alleged (and cannot plausibly allege) that CARFAX obtained or disclosed information from a DMV "motor vehicle record."  18 U.S.C. § 2725(3).  In fact, Plaintiff

- 9 -

alleges the opposite—that CARFAX obtained the Crash Report from a law enforcement agency, not the Maryland MVA. Compl. ¶ 21. ***Second***, even if Plaintiff alleged that CARFAX disclosed information from a "motor vehicle record" (and he cannot), Plaintiff has not alleged (and cannot plausibly allege) that the disclosure was for any impermissible purpose under the DPPA. ***Third***, even if Plaintiff alleged disclosure from a "motor vehicle record" for an impermissible purpose (and he cannot), Plaintiff has not alleged (and cannot plausibly allege) that CARFAX obtained or disclosed Plaintiff's "personal information." 18 U.S.C. § 2725(3). These fundamental pleading defects are further detailed below.

### A. The Complaint Should Be Dismissed Because CARFAX Never Obtained or Disclosed Information from a Motor Vehicle Record.

As the Fourth Circuit has held, it is ***Plaintiff's*** burden of proof under the DPPA to show that a defendant disclosed or obtained information from a "motor vehicle record" for an impermissible purpose. *See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1112 (11th Cir. 2008) ("[W]e conclude that the DPPA is silent on which party carries the burden of proof and, as such, the burden is properly upon the plaintiff."); *see Maracich v. Spears*, 675 F.3d 281, 299 (4th Cir. 2012) (adopting *Thomas*, 525 F.3d at 1112), *vacated and remanded on other grounds*, 570 U.S. 48 (2013).

Plaintiff's Complaint identifies two sets of information that Plaintiff asserts are a "motor vehicle record" under the DPPA: (1) his driver's license and registration and (2) the Crash Report. Compl. ¶¶ 21–22. Plaintiff is incorrect, as neither can support a DPPA claim as a matter of law.

### 1. Plaintiff's License and Registration Are Not Motor Vehicle Records from Which CARFAX Obtained or Disclosed Information.

Plaintiff alleges that his driver's license and vehicle registration are "motor vehicle records" that were used to obtain information that subsequently led to the creation of the Crash Report. Compl. ¶ 21. Even if Plaintiff's license and registration in his possession were motor

vehicle records (they are not for reasons discussed *infra* Section V.A.2), the Fourth Circuit has foreclosed any DPPA liability based on Plaintiff's license and registration. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 925–27 (4th Cir. 2022).

In *Garey*, the plaintiff alleged that "Defendants [improperly] obtained accident reports from local law enforcement agencies or private data brokers" and that these reports contained information that came from plaintiff's driver's license. 35 F.4th at 925–27. The plaintiff argued that the defendants thus improperly obtained a "motor vehicle record" by obtaining information from the driver's license. *Id.* The Fourth Circuit rejected that argument, reasoning that "the DPPA imposes civil liability only on a defendant who obtains [or discloses] personal information *from* a motor vehicle record, but not on a defendant who merely obtains [or discloses] personal information that can be linked back to (*i.e.*, derived from) such a record." *Id.* at 927. Thus, regardless of whether the plaintiff's driver's license was a motor vehicle record, the plaintiff's DPPA claim failed because there were no allegations that the defendants obtained the license directly from the DMV. *See id.*

In sum, as a matter of law, including binding Fourth Circuit precedent, because CARFAX is not alleged to have retrieved the information directly from Plaintiff's driver's license or motor vehicle registration (nor could Plaintiff plausibly allege as much), the allegation that any information on the Crash Report came from Plaintiff's driver's license and motor vehicle registration cannot support a DPPA claim and Plaintiff's Complaint should be dismissed with prejudice. *See* Compl. ¶¶ 21–22; *Garey*, 35 F.4th at 927.

### 2. The Crash Report Is Not a Motor Vehicle Record Because It Was Not Maintained By or Obtained From a DMV.

Plaintiff's Complaint contends that CARFAX acquired Plaintiff's Crash Report from a law enforcement agency—not the MVA—and that this Crash Report is a "motor vehicle record" from

which CARFAX subsequently disclosed personal information.  *See* Compl. ¶ 22.  Plaintiff's legal

conclusion that the Crash Report is a motor vehicle record is incorrect.  Considering the text and

purpose of the DPPA, the vast majority of courts—including all three courts of appeals to have

considered the issue—have concluded that ***only*** records obtained directly from a DMV can qualify

as "motor vehicle records."  *See Fontanez v. Skepple*, 563 F.App'x 847, 849 (2d Cir. 2014)

("Where the personal information at issue is not obtained from a state DMV, no DPPA cause of

action can be found."); *Siegler v. Best Buy Co. of Minnesota*, 519 F.App'x 604, 605 (11th Cir.

2013) ("On its face, the Act is concerned only with information disclosed, in the first instance, by

state DMVs."); *Andrews v. Sirius XM Radio Inc*., 932 F.3d 1253, 1260 (9th Cir. 2019) ("[W]here,

as here, the initial source of personal information is a record in the possession of an individual,

rather than a state DMV, then use or disclosure of that information does not violate the DPPA.").[2]

Starting with the text, the first section of the DPPA (which establishes the framework for

the entire statute) is a general prohibition against "State department[s] of motor vehicles"

disclosing personal information from motor vehicle records.  18 U.S.C. § 2721(a)(1).  Section

2725 defines a motor vehicle record as "any ***record*** that pertains to a motor vehicle operator's

permit, motor vehicle title, motor vehicle registration, or identification card issued by a ***department***

***of motor vehicles***."  18 U.S.C. § 2725 (emphasis supplied).  While the DPPA does not explicitly

define "record," "Congress intended the DPPA to reflect the Privacy Act of 1974 which defines a

'record' as 'information about an individual ***that is maintained by an agency.***'"  *Andrews v. Sirius*

*XM Radio Inc.*, 932 F.3d 1253, 1260 (9th Cir. 2019) (emphasis in original) (quoting 5 U.S.C.

§ 552a(a)(4); citing *Protecting Driver Privacy*, 1994 WL 212698).  Importing this intended

---

[2] *See also, e.g.*, *O'Brien v. Quad Six, Inc.*, 219 F.Supp.2d 933, 934 (N.D. Ill. 2002) (accepting argument that "a driver's license is not a 'motor vehicle record' because it is not in the [state motor vehicle] agency's custody").

meaning from the Privacy Act of 1974 to the DPPA, motor vehicle record means any information about an individual *that is maintained by a department of motor vehicles* that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles. *See* 5 U.S.C. § 552a(a)(4); 18 U.S.C. § 2725(1).

Indeed, the Supreme Court has considered this plain text and described the DPPA as regulating "the resale and redisclosure of drivers' personal information by private persons who have obtained that information *from a state DMV*." *Reno v. Condon*, 528 U.S. 141, 146 (2000) (emphasis supplied); *see also Siegler*, 519 F.App'x at 605 (Eleventh Circuit noting its holding that motor vehicle records must be maintained by DMV is consistent with the Supreme Court's interpretation of DPPA in *Condon*). The Supreme Court confirmed this interpretation in its only other case interpreting the DPPA, stating that "[t]he DPPA regulates the disclosure of personal information contained in the records *of state motor vehicle departments*." *Maracich v. Spears*, 570 U.S. 48, 52 (emphasis supplied); *see also Andrews*, 932 F.3d at 1260 (Ninth Circuit citing *Maracich*, 570 U.S. at 57 as supporting the conclusion that motor vehicle records must be maintained by DMV).

As the Ninth Circuit has recognized, a contrary reading of the DPPA "would thwart the purpose of the overall statutory scheme or lead to an absurd result." *Andrews*, 932 F.3d at 1260. In *Andrews*, the plaintiff presented his driver's license to a car dealership, which took his name and PO Box address from the license and then disclosed that information to Sirius XM. *Id.* at 1255–56. After Sirius XM sent various marketing letters to the plaintiff, he filed a DPPA complaint against the dealership and Sirius XM arguing that "a report (*whether it be an accident report* or dealership record of sales) containing information from a [driver's license] issued by a state DMV" constituted a motor vehicle record. *Id.* at 1257 (emphasis supplied). After addressing

the text of the statute, the Ninth Circuit noted that plaintiff's position would yield "absurd results" and penalize "a range of commonplace and innocuous activities." *Id.* For example, the Court noted, if a driver's license not in the possession of the DMV were considered a motor vehicle record, "a Good Samaritan who finds a driver's license lying on the sidewalk" and attempts to return it to the licensee's address would violate the DPPA as "returning a lost license to its owner is not an enumerated permissible use under the DPPA." *Id.* at 1261 n.6. Similarly, the Court observed, if this "absurd" interpretation were adopted, "a person who uses information on her spouse's driver's license information to make an order or reservation would be liable to the spouse for a DPPA violation." *Id.* at n.7 (quoting *Whitaker v. Appriss, Inc.*, 266 F.Supp.3d 1103, 1009 (N.D. Ind. 2017)).

Interpreting "motor vehicle record" to include records held outside a DMV is particularly absurd as applied to law enforcement records like the Crash Report. In enacting the DPPA as part of the Violent Crime Control and Law Enforcement Act of 1994, Congress was concerned with protecting the common practices of businesses and governments, including law enforcement. Congress struck a balance by limiting the DPPA to DMV records and not "any other systems of public records maintained by States or local governments." 140 Cong. Rec. H2518-01, H2523–24, 1994 WL 140035 (Apr. 20, 1994) (statement of Rep. Edwards). Plaintiff's interpretation of "motor vehicle record" to apply to records held by police agencies would restrict law enforcement by imposing requirements meant only for state DMVs.

For these textual and policy reasons, several courts have specifically held that reports like Plaintiff's Crash Report are not motor vehicle records. For example, in *Mattivi v. Russell*, the court concluded an "accident report generated by the Colorado State Patrol, and provided to defendants by that agency, is not a 'motor vehicle record' under the DPPA" because the record was not issued by

- 14 -

the state's DMV.  No. 01-cv-00533, 2002 WL 31949898, at *4 (D. Colo. Aug. 2, 2002).  And in *Whitaker v. Appriss, Inc.*, the court—after adopting the reasoning of *Fontanez* and *Siegler*—concluded that "[a]n accident report itself isn't a motor vehicle record" that was protected by the DPPA.  266 F.Supp.3d 1103, 1110 (N.D. Ind. 2017).  State court decisions interpreting the DPPA are in accord.  *See, e.g.*, *Arkansas State Police v. Wren*, 491 S.W.3d 124, 128 (Ark. 2016) ("[I]t is clear that a vehicle-accident report is not included in the definition of 'motor vehicle record,' regardless of whether, as a matter of convenience, some of the information included in an accident report may be taken from or verified by a database maintained by the Office of Motor Vehicles.").

      Two district courts in the Western District of North Carolina have concluded erroneously that a North Carolina Crash Report is a motor vehicle record under the DPPA when it contains an individual's address information that was imported from the state's DMV.  *See Gaston v. LexisNexis Risk Sols., Inc.*, 483 F.Supp.3d 318, 336–38 (W.D.N.C. 2020); *Durham v. City of Charlotte*, No. 3:21-cv-00638-RJC-DSC, 2024 WL 4279513, at *17–19 (W.D.N.C. Sept. 24, 2024).[3]  Neither of these cases addresses the statutory text or policy implications above.  Moreover, both of these cases rely on reasoning rejected by the Fourth Circuit in *Garey*.

      In *Gaston*, the district court reasoned that a Crash Report which imports address information from the state's DMV is a "motor vehicle record" because of a line on the Crash Report form—"'Same address as driver's license' is checked"—which meant that "everyone who

---

[3] A third district court concluded that underlying data from a DMV database which populate a North Carolina Crash Report form are motor vehicle records, and that law enforcement thus had to redact any "personal information" before disclosing the crash report under the DPPA. *McClatchy Co. v. Town of Chapel Hill, N. Carolina*, 657 F.Supp.3d 769, 776–78 (M.D.N.C. 2023). The *McClatchy* court did not determine whether the crash reports themselves are motor vehicle records, which is the relevant question here.  *Contra Durham v. City of Charlotte*, 2024 WL 4279513, at *18 (mistakenly describing *McClatchy* as holding that Crash Reports are motor vehicle records).

has access to the [Crash Report] knows the address on that individual's driver's license just the same as if they had the person's driver's license in their hands."  483 F.Supp.3d at 336–37; *see also id.* at 336 & n.10 ("'Pertain to' or 'pertain' is a broad term.").  (The *Durham* court adopted the *Gaston* court's reasoning.  *See* 2024 WL 4279513, at *17–18.)  Under the reasoning of *Gaston*, an individual's address information transforms any record held by any entity, public or private, into a "motor vehicle record" if it also references a driver's license.  But the Court in *Garey* **rejected** the argument that "if a piece of personal information can be traced back to a motor vehicle record, the DPPA protects the information."  35 F.4th at 926 (quotations omitted).

In sum, as a matter of law, records that are not maintained by or obtained from a state DMV are not motor vehicle records under the DPPA.  Plaintiff's allegation that CARFAX obtained his Crash Report from a law enforcement agency, and not the MVA, is fatal to his DPPA claim.  *See* Compl. ¶ 22.  Because Plaintiff's Crash Report is not a "motor vehicle record" under the DPPA, this Court should dismiss the Complaint with prejudice.  *See, e.g.*, *Fontanez*, 563 F.App'x at 849 (affirming dismissal).

### B. The Complaint Should Also Be Dismissed Because Plaintiff Has Not, and Cannot, Sufficiently Allege That CARFAX Had an Impermissible Purpose.

Plaintiff alleges that CARFAX lacked a permissible purpose under the DPPA when it obtained Crash Reports from law enforcement and then sold them for "commercial gain."  Compl. ¶¶ 4, 13, 44, 48, 49.  However, even if motor vehicle accident reports were "motor vehicle records" under the DPPA (and they are not), the DPPA does not prohibit the sale of personal information for commercial gain.  To the contrary, Section 2721(c) expressly contemplates commercial gain, stating that an authorized recipient of personal information "may resell or redisclose the information . . . for a use permitted under [18 U.S.C. § 2721(b)]."  18 U.S.C. § 2721(c).  Indeed, "Congress was well aware of the economic value of DMV records and of the common state

practice of selling drivers' personal information to private resellers." *Russell v. Choicepoint Servs., Inc.*, 302 F.Supp.2d 654, 665 (E.D. La. 2004).  Under Section 2721(c), a person who obtains personal information may redisclose that information—even for a commercial purpose—to another person so long as the other person has a permissible use. *See, e.g.*, *Russell*, 302 F.Supp.2d at 665 (holding the DPPA "permit[s] personal information resellers like [defendant] who are authorized by the state or its DMV to obtain drivers' personal information for the purpose of redistribution to persons with 'permissible uses.'"); *Graczyk v. W. Pub. Co.*, 660 F.3d 275, 279–81 (7th Cir. 2011) ("[T]he DPPA does not prohibit [defendant] from reselling records it obtains from state DMVs to persons with permissible uses"); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 338 (5th Cir. 2010) ("an authorized recipient is authorized to resell to individuals for one or more of the specific purposes under section 2721(b).").

The Complaint should be dismissed because Plaintiff alleges that CARFAX distributes motor vehicle crash reports, which is a ***permissible purpose*** for CARFAX under the DPPA independent of the purpose of any third-party purchaser.  Section 2721(b)(14) includes as a permissible purpose "any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety."  18 U.S.C. § 2721(b)(14).[4]   Under Maryland law, the Department of State Police is authorized, indeed required, to "disseminate information about the occurrence of motor vehicle accidents in the State."  Md. Code, Pub. Safety § 2-306(a).  The Department of State Police is also authorized to "establish conditions under which reports of specific motor vehicle accidents may be made

---

[4] Section 2721(b) also includes as a permissible purpose "use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."  18 U.S.C. § 2721(b)(1).

available on request to the public." Md. Code, Pub. Safety § 2-308(b)(4). By allegedly providing the Crash Report to CARFAX, Compl. ¶ 21, law enforcement has chosen CARFAX as a method to "disseminate information about the occurrence of motor vehicle accidents in the State." Md. Code, Pub. Safety § 2-306(a).

A Wisconsin decision is instructive on how the Maryland code (and other similar state laws) interact with DPPA Section 2721(b)(14). In *New Richmond News v. City of New Richmond*, a plaintiff newspaper requested Crash Reports from a police department under the state's public records law. 881 N.W.2d 339, 342 (Wisc. App. 2016). The police department provided Crash Reports with redacted information identifying individuals, citing the DPPA as requiring such redactions. *Id.* The newspaper then sued the police department, alleging violations of the state's public records law because the redactions were not required by the DPPA. *Id.* The Wisconsin trial court and appellate court held that the DPPA did not require the police department to redact information identifying individuals from police reports because a Wisconsin law "specifically mandates that law enforcement agencies provide the public with access to uniform traffic accident reports." *Id.* at 352 (citing Wis. Stat. § 346.70(4)(f)). The Court noted that such a law is "***related to the operation of a motor vehicle or public safety***." *Id.* (emphasis supplied). "Accordingly, a law enforcement agency's disclosure of personal information contained in accident reports is ***permissible under 18 U.S.C. § 2721(b)(14)***." *Id.* (emphasis supplied).

The same reasoning applies here. Maryland law explicitly requires the dissemination of Crash Reports. Md. Code, Pub. Safety §§ 2-306(a), 2-308(b)(4). This law is "related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). Thus, the dissemination of Crash Reports—the conduct alleged in the Complaint—is a permissible use of personal information under the DPPA. Because the conduct alleged in the Complaint is a permissible use

under the DPPA, Plaintiff cannot state a claim under the DPPA and this Court should dismiss the Complaint with prejudice. *See New Richmond News*, 881 N.W.2d at 342.

Plaintiff thus cannot state a DPPA claim against CARFAX unless Plaintiff can plausibly allege that CARFAX disclosed "personal information" to a third party that did not have a permissible purpose under Section 2721(b). The Complaint, however, contains no such factual allegations. The most that Plaintiff alleges, "[u]pon information and belief," is that CARFAX distributed the Crash Report "without ascertaining whether the third-party purchasers were permitted under the DPPA to possess the personal information therein" and to "purchasers that were not permitted under the DPPA to possess the personal information therein." Compl. ¶¶ 22–23. Nowhere in the Complaint is there an allegation as to (i) who purchased Plaintiff's Crash Report, (ii) what impermissible purpose that purchaser had, nor (iii) what effort CARFAX makes to determine the purchaser's use. *See generally id.* Plaintiff's conclusory allegations as to the purported purposes of unnamed third parties are merely "bare assertions devoid of further factual enhancement," which are insufficient to state a claim under *Twombly* and *Iqbal*. *See, e.g., Nemet Chevrolet*, 591 F.3d at 255, 258 (affirming dismissal). For this reason alone, the Complaint should be dismissed.

### C. The Complaint Should Additionally Be Dismissed Because Plaintiff Has Not Plausibly Alleged, and Cannot Plausibly Allege, Disclosure of Personal Information.

Plaintiff alleges that his Crash Report "contained Plaintiff's personal information" and that CARFAX "sold the Crash Report." Compl. ¶¶ 21, 23. Completely absent from the Complaint, however, is any allegation as to what information this Crash Report contained other than it being

"about Plaintiff's accident."  Compl. ¶ 22.[5]  Plaintiff did not include the Crash Report as an exhibit to the Complaint.  The Complaint's allegations that the Crash Report contained "personal information" without any specificity is a prime example of "bare assertions devoid of further factual enhancement," which are insufficient to state a claim under *Twombly* and *Iqbal*.  *Nemet Chevrolet*, 591 F.3d at 255, 258 (affirming dismissal).  For this reason alone, Plaintiff's Complaint should be dismissed.

Even if Plaintiff were to cure this defect and attach the Crash Report ***and*** the Crash Report contained Plaintiff's driver identification number and residential address, Plaintiff's Complaint should still be dismissed for the independent reason that because the Crash Report is "about Plaintiff's accident," any information on the Crash Report is not personal information under the DPPA.

Plaintiff may misinterpret the DPPA's definition of personal information as limiting "information on vehicular accidents" to any information that does not identify an individual, such as "photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information."  Such an interpretation would be nonsensical.  The exception for vehicular accidents, driving violations, and driver's status would be meaningless if it could not identify a driver.  As the architect of the DPPA made clear, "the [DPPA] in no way affects access to accident information about the car or driver.  Nothing in this bill would stop anyone from finding out another person's driving record, accidents, or status."  140 Cong. Rec. H2518-01, H2523, 1994 WL 140035 (Apr. 20, 1994) (statement of

---

[5] Paragraph 21 of the Complaint alleges that Plaintiff's driver identification number and residential address were provided to a law enforcement officer.  But there is no allegation that the Crash Report contains either piece of information.

Rep. Moran).  It would certainly be quite an impediment to finding out an individual's driving record if "personal information" were interpreted to prohibit access to an individual's information.

The only reasonable interpretation of the DPPA is that any information "on vehicular accidents" is not personal information.  *See Mattivi*, 2002 WL 31949898, at *4 ("[S]ection 2725(e) makes clear that Congress did not intend 'information on vehicular accidents' to be included within the Act's prohibition of disclosure of 'personal information.'"); *Arkansas State Police*, 491 S.W.3d at 128 ("Furthermore, Congress specifically provided that 'personal information' does not include information on vehicular accidents."); *cf. Keogh v. Meta Platforms, Inc.*, 680 F.Supp.3d 601, 611 (D.S.C. 2023) ("[D]isclosures not prohibited by the DPPA include information/records connected with events that a person might well want to remain private, such as accident reports . . . .").

Because any information disclosed from the Crash Report cannot be personal information under the DPPA, the Court should dismiss Plaintiff's claim with prejudice.  *See Mattivi*, 2002 WL 31949898, at *4 (granting summary judgment to defendant on DPPA claim because crash reports are not motor vehicle reports and do not contain personal information under the DPPA).

## VI.    CONCLUSION

For the foregoing reasons, Defendant CARFAX, Inc. respectfully requests that the Court dismiss the entirety of the Complaint with prejudice.


Respectfully submitted this 11th day of April, 2025.

**SQUIRE PATTON BOGGS (US) LLP**

By: */s/ John A. Burlingame*
John A. Burlingame (Bar No. 15456)
john.burlingame@squirepb.com
2550 M Street NW
Washington, DC 20037
Telephone: +1 202 626 6871
Facsimile: +1 202 457 6315

Kristin L. Bryan (admitted *pro hac vice*)
kristin.bryan@squirepb.com
1000 Key Tower
127 Public Square
Cleveland, OH 44114
Telephone: +1 216 479 8070
Facsimile: +1 216 479 8780

*Attorneys for Defendant*
*CARFAX, Inc.*