**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

BENJAMIN LUCAS,

        Plaintiff,

    v.

CARFAX, INC.,

        Defendant.

**Case No. 8:25-cv-00632-JRR**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT BACKGROUND ...........................................................................2

III.  LEGAL STANDARD..........................................................................................3

IV.   ARGUMENT .......................................................................................................4

      A.  Carfax Obtained and Disclosed Information from a Motor Vehicle Record................5

      B.  Carfax Lacked a Permissible Purpose........................................................12

      C.  The Crash Report Contains Plaintiff's Personal Information .....................18

V.    CONCLUSION..................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Sirius XM Radio Inc.*,
  932 F.3d 1253 (9th Cir. 2019) ...................................................................7, 8, 10

*Arkansas State Police v. Wren*,
  491 S.W.3d 124 (Ark. 2016)............................................................................9, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................4, 17

*Ayes v. U.S. Dept. of Vet. Affairs*,
  473 F.3d 104 (4th Cir. 2006) .......................................................................1, 6, 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................4, 17

*Boykin v. KeyCorp*,
  521 F.3d 202 (2d Cir. 2008)..................................................................................17

*Doe v. Salisbury Univ.*,
  123 F. Supp. 3d 748 (D. Md. 2015)...........................................................2, 17, 18

*Durham v. City of Charlotte*,
  No. 3:21-cv-00638-RJC-DSC, 2024 WL 4279513 (W.D.N.C. Sept. 24, 2024)......................6

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ...................................................................................4

*Fontanez v. Skepple*,
  563 F. App'x 847 (2d Cir. 2014) .........................................................................7, 8

*Garey v. James S. Farrin, P.C.*,
  35 F.4th 917 (4th Cir. 2022) ..........................................................................4, 5, 6

*Gaston v. LexisNexis Risk Sols., Inc.*,
  483 F. Supp. 3d 318 (W.D.N.C. 2020) .............................................................6, 16

*Glass v. Anne Arundel Cty.*,
  453 Md. 201 (2017) ..................................................................................................12

*Gunn v. JPMorgan Chase Bank, N.A.*,
  No. 8:24-CV-0053-AAQ, 2024 WL 4451609 (D. Md. Oct. 8, 2024) ....................14

*Hanley v. State Farm Mut. Auto., Inc. Co.*,
    No. 1:22-cv-00809-JRR, 2024 WL 2113630 (D. Md. May 10, 2024) ...................................... 5

*Hatch v. Demayo*,
    No. 1:16-cv-925, 2017 WL 4357447 (M.D.N.C. Sept. 29, 2017),
    *corrected on recons.*, 2018 WL 6003548 (M.D.N.C. Nov. 15, 2018),
    *and on recons. in part*, 2020 WL 91873 (M.D.N.C. Jan. 8, 2020) .................................... 20, 22

*Heym v. APG Hous., LLC*,
    No. 1:23-cv-02092-JRR, 2024 WL 2302306 (D. Md. May 21, 2024) .................................... 19

*Lowe v. Spears*,
    258 F. App'x 568 (4th Cir. 2007) .......................................................................................... 19

*Malibu Media, LLC v. Doe*,
    No. 8:13-cv-00365-PWG, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ................................ 17

*Maracich v. Spears*,
    570 U.S. 48 (2013) .................................................................................................................. 10

*Mattivi v. Russell*,
    No. 01-cv-00533, 2002 WL 31949898 (D. Colo. Aug. 2, 2002) .................................. 9, 21, 22

*Mitchell v. N.Y.C. Dep't of Educ.*,
    No. 24-992, 2025 WL 978366 (2d Cir. Mar. 31, 2025) ......................................................... 17

*New Richmond News v. City of New Richmond*,
    881 N.W.2d 339 (Wisc. App. 2016) ................................................................................. 14, 15

*Owens v. Balt. City State's Atty's Off.*,
    767 F.3d 379 (4th Cir. 2014) .................................................................................................... 4

*Pavone v. Meyerkord & Meyerkord, LLC*,
    118 F. Supp. 3d 1046 (N.D. Ill. 2015) .............................................................................. 20, 22

*Reno v. Condon*,
    528 U.S. 141 (2000) .................................................................................................................. 9

*Siegler v. Best Buy Co. of Minnesota*,
    519 F. App'x 604 (11th Cir. 2013) ..................................................................................... 7, 8, 9

*Tow v. Harris*,
    No. 1:24-cv-00236-JRR, 2024 WL 4803188 (D. Md. Nov. 15, 2024) ..................................... 4

*United States v. Garcia,*
    855 F.3d 615 (4th Cir. 2017) .................................................11

*Whitaker v. Appriss, Inc.,*
    266 F. Supp. 3d 1103 (N.D. Ind. 2017) ...............................9, 22

*Witthohn v. Fed. Ins. Co.,*
    164 F. App'x 395 (4th Cir. 2006) .........................................3, 14

**Statutes and Regulations**

18 U.S.C. § 2721 ............................................................... *passim*

18 U.S.C. § 2724 .......................................................................2, 4

18 U.S.C. § 2725 .....................................................................5, 19

COMAR 11.11.09.01 ..................................................................11

COMAR 11.11.09.02 .............................................................11, 20

COMAR 11.11.09.04 ..................................................................12

COMAR 11.11.09.05 ..................................................................12

COMAR 11.11.09.06 .............................................................12, 20

COMAR 11.11.09.07 ..................................................................12

COMAR 11.11.09.08 ..................................................................12

COMAR 29.01.02.02 ..................................................................12

COMAR 29.02.02.01 .............................................................12, 15

Md. Code, Gen. Prov., § 4-101 .............................10, 11, 12, 20

Md. Code, Gen. Prov., § 4-320 ................................................11

Md. Code, Pub. Safety § 2-306 .........................................13, 14, 15

Md. Code, Pub. Safety § 2-308 ..............................................14, 15

**Rules**

Fed R. Civ. P. 8.................................................................................................................2, 17

Fed R. Civ. P. 12...............................................................................................................3, 13

Fed R. Civ. P. 15...............................................................................................................19

**Other Authorities**

140 Cong. Rec. H2518-01, 1994 WL 140035 (Apr. 20, 1994) ................................................7, 21

MPIA Manual, Office of the Attorney General (19th ed., 2024) .................................................11

Plaintiff Benjamin Lucas ("Plaintiff") respectfully requests that the Court deny Defendant Carfax, Inc.'s ("Carfax") Motion to Dismiss Plaintiff's Complaint (ECF No. 10; the "Motion") for the following reasons.

## I.    __INTRODUCTION__

Carfax attempts to avoid liability for violating the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq.* (the "DPPA"), by ignoring the statutory text and instead cherry-picking quotes from the legislative history to argue that motor vehicle accident reports ("Crash Reports") are not protected under the DPPA. Because Carfax does not argue that the statutory language is ambiguous, the judicial inquiry must begin and end with the plain meaning of the words. *Ayes v. U.S. Dept. of Vet. Affairs*, 473 F.3d 104, 108 (4th Cir. 2006). Giving effect to every provision and word in the DPPA, Crash Reports are plainly "motor vehicle records" and, therefore, the "personal information" in Crash Reports cannot be disclosed unless there is a permissible purpose under 18 U.S.C. § 2721. Even if the Court were to peek behind the curtain, the relevant legislative history supports Plaintiff's statutory interpretation: Congress recognized that the "key difference" between a motor vehicle record protected by the DPPA and other public records is whether the record can link a vehicle's license plate to a person's name and address. Crash Reports do exactly that.

Plaintiff's common sense reading of the DPPA is also supported by the Maryland public safety laws cited in the Motion, as well as the Maryland statutes and regulations pertaining to the Maryland Department of Transportation Motor Vehicle Administration ("MVA") that Carfax ignores. The former identifies the information that must be disclosed about an accident under state law subject to the non-disclosure requirements of the DPPA. The latter expressly include "accident reports" within the definition of motor vehicle records for purposes of the DPPA.

Finally, what Carfax doesn't say in the Motion is telling. Carfax does not deny that it: (i) purchased the Crash Report about Plaintiff's accident; (ii) sold the Crash Report to third parties that were not permitted under the DPPA to possess the personal information therein; and (iii) failed to make a reasonable inquiry as to whether such third parties would use the Crash Report only for an authorized purpose under the DPPA. Instead, Carfax argues only that allegations made on information and belief cannot satisfy the pleading standard of Rule 8(a). But this Court has long held that such allegations are sufficient to state a claim for relief, particularly where—as here— the facts are peculiarly within the possession or control of the defendant. *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 768 (D. Md. 2015). Carfax's protest—that Plaintiff has not alleged additional information about Carfax's unlawful conduct already known to Carfax—is without merit.

The Complaint sufficiently states a claim against Carfax under 18 U.S.C. § 2724(a) for violating the DPPA, and the Court should deny the Motion.

## II.   RELEVANT BACKGROUND

Carfax is in the lucrative business of collecting and selling data from the Department of Motor Vehicles ("DMV") for every U.S. state and the District of Columbia. Compl. ¶ 2. In addition to vehicle history data, Carfax maintains, markets, and sells access to a national database of more than 1.5 million Crash Reports, which are available to purchase from Carfax through various websites, including www.crashdocs.org and www.CarfaxForClaims.com. *Id.*

Plaintiff, a resident of Maryland with a driver's license issued by the MVA, was involved in a motor vehicle accident in Maryland on December 4, 2023. Compl. ¶¶ 5, 20. The law enforcement officer investigating the accident utilized Plaintiff's driver's license and vehicle registration to collect Plaintiff's driver identification number and residential address, which the officer then transmitted to the MVA for the purpose of creating a Crash Report about the accident.

*Id.* ¶ 21. The MVA is a state DMV under the DPPA. *Id.* ¶ 5. After creating the Crash Report, which contains Plaintiff's personal information, the MVA transmitted the Crash Report to the investigating officer's law enforcement agency. *Id.* ¶ 21. A redacted copy of the Crash Report is attached hereto as Exhibit A.[1] The Crash Report contains information about, inter alia, the nature, location, cause, and time of the accident, the individuals and vehicles involved in the accident (including but not limited to name, driver's license number, date of birth, telephone number, home address, vehicle license plate, and vehicle registration number), and medical information related to injuries suffered during the accident. *See generally* Ex. A.

Carfax knowingly purchased the Crash Report about Plaintiff's accident from the investigating officer's law enforcement agency and sold it to third parties without Plaintiff's consent and despite the fact such third parties were not permitted under the DPPA to possess the personal information within the Crash Report. *Id.* ¶¶ 22–23. Before selling the Crash Report, Carfax failed to make a reasonable inquiry as to whether the Crash Report would be used by the third-party purchasers only for an authorized purpose under the DPPA. *Id.* ¶ 24. At all times relevant to this action, Carfax acted for its own commercial gain and not for any purpose permitted under the DPPA. Compl. ¶¶ 4, 44.

## III.   LEGAL STANDARD

"A 'Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts

---

[1] While a motion to dismiss under Rule 12(b)(6) ordinarily focuses on the allegations in the complaint, it is well established that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).

in support of his claim entitling him to relief.'" *Tow v. Harris*, No. 1:24-cv-00236-JRR, 2024 WL 4803188, at *2 (D. Md. Nov. 15, 2024) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## IV.    <u>ARGUMENT</u>

The Complaint asserts a claim against Carfax under the DPPA, which "provides a cause of action against '[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter.'" *Garey v. Farrin*, 35 F.4th 917, 925 (4th Cir. 2022) (quoting 18 U.S.C. § 2724(a)); *see also* Compl. ¶¶ 37–50.

Carfax does not deny that it is a "person" for purposes of Section 2724(a) or that it acts knowingly when it buys and sells Crash Reports. Compl. ¶¶ 40, 44. Instead, Carfax argues that the Complaint should be dismissed because: (i) Crash Reports are not "motor vehicle records" under the DPPA; (ii) the Complaint does not plausibly allege disclosure to or from Carfax for a purpose other than the permissible uses listed in 18 U.S.C. § 2721(b); and (iii) the Complaint does not

plausibly allege disclosure of "personal information," as defined in 18 U.S.C. § 2725(3). Mot. at 9–10. Each of these arguments is without merit, and the Court should deny the Motion.

### A.  Carfax Obtained and Disclosed Information from a Motor Vehicle Record

Carfax argues that Crash Reports are not "motor vehicle records" under the DPPA because the Complaint alleges that Carfax "acquired" the Crash Report relating to Plaintiff's accident from the investigating officer's law enforcement agency and not directly from the MVA. Mot. at 11–12. Carfax's argument ignores the plain language of the DPPA, misconstrues the statute's legislative history and relevant precedent within the Fourth Circuit, and relies on inapposite case law from other circuits. Moreover, Maryland statutes and regulations pertaining to public safety and the MVA expressly recognize Crash Reports as motor vehicle records for purposes of the DPPA and implement a procedure for disclosing Crash Reports subject to the DPPA's non-disclosure requirements.

The Court's analysis "begin[s] with the statutory text." *Garey*, 35 F.4th at 925. "[A] cardinal rule of statutory construction provides that courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous. When interpreting words, [courts] must give them their common and ordinary meaning." *Hanley v. State Farm Mut. Auto., Inc. Co.*, No. 1:22-cv-00809-JRR, 2024 WL 2113630, at *8 (D. Md. May 10, 2024) (Rubin, J.) (marks and ellipsis omitted).

The DPPA defines "motor vehicle record" to mean "<u>any</u> record that pertains to a motor vehicle operator's permit [i.e., a driver's license], motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1) (emphasis added). The meaning of the definition is plain on its face; no other provision of the DPPA limits or modifies it. By its very nature, a Crash Report is a record that "pertains to" a driver's license,

vehicle title, vehicle registration, and/or identification card issued by a DMV, because it contains information about the individual(s) and vehicle(s) involved in a motor vehicle accident, including but not limited to driver's license, license plates, and vehicle registration numbers. *See* Ex. A.

Two district courts in this circuit have conducted this textual analysis and likewise concluded that Crash Reports are "motor vehicle records" under the DPPA. *See Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 336–37 (W.D.N.C. 2020) (Crash Reports are motor vehicle records because they "'pertain to' a motor vehicle operator's permit (i.e. a driver's license)"); *Durham v. City of Charlotte*, No. 3:21-cv-00638-RJC, 2024 WL 4279513, at *17–19 (W.D.N.C. Sept. 24, 2024) (Crash Reports "are 'motor vehicle records' under the statutory definition"). Citing *Gaston*, the Fourth Circuit in *Garey* wrote, "there is a non-frivolous textual argument that an accident report is a 'record that pertains to a motor vehicle operator's permit,' because the report indicates whether a driver's address is the same as that shown on their license." 35 F.4th at 927 (quoting in part the statutory definition of "motor vehicle record").[2]

Although the Court need not consider congressional intent here because Carfax has not alleged that the statutory language is ambiguous, *Ayes*, 473 F.3d at 108, the legislative history of the DPPA supports the statutory interpretation that Crash Reports are motor vehicle records. Representative James Moran, author of the eponymous amendment that added a private cause of action to the bill that would become the DPPA, explained in relevant part:

> The key difference between DMV records and other public records comes from the license plate, through which every vehicle on the public highways can be linked to a specific individual. Anyone with access to data linking license plates with vehicle

---

[2] Carfax attempts to downplay the relevance of *Durham* by incorrectly arguing that the district court "rel[ied] on reasoning rejected by the Fourth Circuit in *Garey*." Mot. at 15. Not only does *Durham* post-date *Garey* by more than two years, but the district court discussed *Garey* at length and expressly based its own conclusion on the "statutory definition" of "motor vehicle record." 2024 WL 4279513, at *18.

ownership has the ability to ascertain the name and address of the person who owns that vehicle. <u>Other public records are not vulnerable to abuse in the same way.</u>

Unlike with license plate numbers, people concerned about privacy can usually take reasonable steps to withhold their names and addresses from strangers, and thus limit their access to personally identifiable information. By contrast, no one is free to conceal his or her license plate while traveling by automobile.

Recognizing this distinction, this amendment applies only to specified categories of personal information contained in motor vehicle records.

140 Cong. Rec. H2518-01, H2523, 1994 WL 140035 (Apr. 20, 1994) (emphasis added).

Crash Reports are precisely the sort of DMV record that permit a stranger to link a vehicle's license plate to the owner's name and address—the harm Congress sought to protect against—and thus are "motor vehicle records" under the DPPA. To conclude otherwise would ignore Congress's intent that the DPPA protect the public records "vulnerable to [such] abuse." *Id.*

Carfax's reliance on decisions from the Second, Ninth and Eleventh Circuits to argue otherwise is misplaced. *See* Mot. at 12 (citing *Fontanez v. Skepple*, 563 F. App'x 847 (2d Cir. 2014); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019); *and Siegler v. Best Buy Co. of Minnesota*, 519 F. App'x 604 (11th Cir. 2013)). All three decisions stem from allegations that <u>a driver's license</u>—<u>not a Crash Report</u>—is a motor vehicle record under the DPPA. *See Fontanez*, 563 F. App'x at 848; *Andrews*, 932 F.3d at 1259; *Siegler*, 519 F. App'x at 604. Nor do the cases stand for the proposition for which Carfax cites them—that "<u>only</u> records obtained directly from a DMV can qualify as 'motor vehicle records.'" Mot. at 12 (emphasis in original).

The Second Circuit in *Fontanez* narrowly held that "the DPPA does not protect against the use of personal information obtained from a driver's license provided by the holder as proof of identity to gain access to a facility." 563 F. App'x at 848. And while the court noted that the DPPA "was designed principally to protect against the disclosure of personal information obtained from

searches of DMV records by DMV employees," it recognized that "the DPPA also applies to disclosures by [authorized resellers under 18 U.S.C. §§ 2721(b), (c)]." *Id.* at 848–49.

Similarly, the Ninth Circuit in *Andrews* "conclude[d] that a driver's license in the possession of its owner is not a qualifying 'motor vehicle record' under the DPPA." 932 F.3d at 1259. The court reasoned that where "the <u>initial source</u> of personal information is a record in the possession of an individual, rather than a state DMV, then use or disclosure of that information does not violate the DPPA." *Id.* at 1260 (emphasis added). The court did not address the situation at issue here—disclosure of personal information in Crash Reports by a reseller of DMV records— and plainly limited the scope of its opinion to driver's licenses. *See id.* at 1261 ("we will not subject a range of commonplace and innocuous activities involving driver's licenses to potential DPPA liability").

In *Siegler*, the Eleventh Circuit affirmed the district court's ruling that there was no violation of the DPPA where the plaintiff had voluntarily presented his driver's license to the defendant. 519 F. App'x at 604–605. Like the Second Circuit in *Fontanez*, the Eleventh Circuit recognized that the DPPA also "restricts the <u>redisclosure</u> of information obtained from a state DMV to limited circumstances by recipients authorized to receive disclosures under § 2721(b)." *Id.* at 605 (emphasis in original).

Carfax's reliance on these cases appears to turn on a misreading of the Complaint and a misstatement of the law. Specifically, Carfax argues that the Crash Report about Plaintiff's accident is not a motor vehicle record because "it was not maintained by or obtained from a DMV." Mot. at 11; *see also id*. at 14 ("Plaintiff's interpretation of 'motor vehicle record' [applies] to record held by police agencies"). To be clear, the Complaint alleges that <u>the MVA</u> created the Crash Report about Plaintiff's accident and subsequently transferred it to a law enforcement agency:

> The investigating officer then transmitted the collected information to the MVA for the purpose of creating a Crash Report about the accident. After creation of the Crash Report, which contained Plaintiff's personal information, the MVA transmitted the Crash Report back to the investigating officer's law enforcement agency.

Compl. ¶ 21. Thus, the Complaint alleges that the Crash Report <u>originated</u> from a state DMV, i.e., the MVA. For this reason, Carfax's reliance on cases in which Crash Reports were found to have originated from sources other than a state DMV is misplaced. *See* Mot. at 14–15 (citing *Mattivi v. Russell*, No. 01-cv-00533, 2002 WL 31949898 (D. Colo. Aug. 2, 2002) (originated from law enforcement agency); *Whitaker v. Appriss, Inc.*, 266 F. Supp. 3d 1103 (N.D. Ind. 2017) (same); and *Arkansas State Police v. Wren*, 491 S.W.3d 124 (Ark. 2016) (same)).

Carfax's second argument, that the DPPA does not regulate the disclosure of motor vehicle records "held outside a DMV," Mot. at 14, is likewise not supported by the case law cited in the Motion. For example, Carfax cites *Siegler*, 519 F. App'x at 605, for the proposition that the "Eleventh Circuit not[ed] its holding that motor vehicle records must be maintained by DMV is consistent with the Supreme Court's interpretation of DPPA in [*Reno v. Condon*, 518 U.S. 141 (2000)]." Mot. at 13. Neither the Eleventh Circuit in *Siegler* nor the Supreme Court in *Condon* held that motor vehicle records must be maintained by a state DMV for the DPPA's protections to attach. Rather, the Eleventh Circuit stated that its statutory interpretation that the DPPA prohibits "the disclosure or redisclosure of information <u>originating</u> from [DMV] records" "is consistent with that of the Supreme Court in *Condon*." 519 F. App'x at 605 (emphasis in original). The Supreme Court, in turn, held that the DPPA "regulates the resale and redisclosure of drivers' personal information by private persons who have obtained that information from a state DMV." *Condon*, 518 U.S. at 146. Nowhere in either decision did either court hold that motor vehicle records must

be "maintained" by a state DMV for the DPPA to continue to apply.[3] Again, the key factual allegation here is that Plaintiff's Crash Report <u>originated</u> from the MVA, which is all that the statute and interpreting case law require.

Only the Ninth Circuit's decision in *Andrews* contains language that—when read in isolation—could be incorrectly interpreted as holding that a motor vehicle record must be maintained by a state DMV to be protected under the DPPA. The court observed that a driver's license becomes the possession of an individual to whom it is issued by the DMV and commented that a license "in the possession of its owner is no longer maintained by the DMV, and so such a record is outside the bounds of the DPPA." 932 F.3d at 1260. The same is not true when motor vehicle records are resold and/or redisclosed by resellers under Section 2721(c), as alleged here. To hold otherwise would render superfluous the requirement that resellers—which irrefutably maintain records outside a state DMV—comply with the permitted use restrictions under subsection (b). *See* 18 U.S.C. § 2721(c) ("An authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection (b)"). Thus, Carfax wrongly asks this Court to interpret the DPPA in a manner that would render sections of the law a nullity—a result that black-letter precedent prohibits.

Finally, Maryland statutes and regulations pertaining to public safety and the MVA refute Carfax's argument that motor vehicle records maintained by a state agency other than the MVA are not protected by the DPPA. The Maryland Public Information Act ("MPIA"), Md. Code, Gen. Prov., §§ 4-101, *et seq.*, prohibits a custodian of the State (or a political subdivision thereof) from "knowingly disclos[ing] a public record of the [MVA] containing personal information," and in

---

[3] The same is true of *Maracich v. Spears*, 570 U.S. 48 (2013), which Carfax also cites for the same inaccurate proposition. *See* Mot. at 13.

the context of a request for an individual motor vehicle record, prohibits disclosure "without written consent from the person in interest." Md. Code, Gen. Prov., § 4-320(b), (d)(1) and (2). The MPIA's definition of "personal information" is nearly identical to the definition of "personal information" under the DPPA. *See* Md. Code, Gen. Prov., § 4-101(h) (including name, address, driver's license number, medical or disability information, telephone number, driver's photograph, and social security number, but excluding driver's status, driving offenses, five-digit zip code, and "information on vehicular accidents"). The MPIA contains enumerated exceptions permitting disclosure of MVA records containing personal information, which "are modeled in large part after provisions of the [DPPA]." MPIA Manual, Office of the Attorney General (19th ed., 2024), at 3-18 (available at https://www.marylandattorneygeneral.gov/Pages/OpenGov/piamanual.aspx).[4]

Regulations governing public access to MVA records under the MPIA and the DPPA are codified at Code of Maryland Regulations ("COMAR"), Title 11 Department of Transportation, Subtitle 11 Motor Vehicle Administration – Administrative Procedures, Chapter 09 Access to Public Motor Vehicle Administration Records. *See* COMAR 11.11.09.01 ("The purpose of this chapter is to comply with the [MPIA] and with the [DPPA] in order to: A. Maintain the confidentiality of motor vehicle drivers' records including personal information; and B. Establish procedures for applicants to obtain records eligible to be disclosed."). "Records" is defined to include "accident reports" and "Custodian" has the same meaning as stated in the MPIA, which broadly defines the term to mean "the official custodian; or [] any other authorized individual who has physical custody and control of a public record." *See* COMAR 11.11.09.02(5), (11); Md. Code,

---

[4] The Court may take judicial notice of the MPIA Manual. *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

Gen. Prov., § 4-101(d), (f)[5]; *see also Glass v. Anne Arundel Cty.*, 453 Md. 201, 235 (2017) ("the Maryland Attorney General has advised that 'an agency's records remain 'public records' [under the MPIA] even if the agency outsources the task of maintaining them to a private contractor'" (citation omitted)).

In other words, for purposes of the MVA's disclosure of motor vehicle records—including Crash Reports—under the MPIA and the DPPA, Maryland law recognizes that the custodian of Crash Reports may be outside of the MVA, and yet the regulations for disclosure of such records is identical regardless of which state agency has physical custody and control of the records. *See generally* COMAR 11.11.09.04–08 (governing MVA record access, waiver procedure, disclosure denial, disclosure consent, and fees). Further, the MVA regulations are not inconsistent with the single Maryland State Police regulation regarding disclosure of Crash Reports. *See* COMAR 29.02.02.01 (providing that Crash Reports "may be obtained either through the Central Records Division or reviewed at the installation in the area of the occurrence" and identifying certain information that must be furnished on all requests).

### B. Carfax Lacked a Permissible Purpose

Carfax incorrectly argues that the Complaint does not plausibly allege disclosure to or from Carfax for a purpose other than the permissible uses listed in 18 U.S.C. § 2721(b) because "Maryland law enforcement agencies contract with CARFAX as a way to distribute Crash Reports in compliance with state law." Mot. at 7; *see also id.* at 18 ("law enforcement has chosen CARFAX as a method to 'disseminate information about the occurrence of motor vehicle accidents in the State'").

---

[5] In contrast, the Maryland State Police regulations define "custodian" to narrowly mean "an authorized person employed by the Department [of State Police] having personal custody and control of public records of the Department." COMAR 29.01.02.02.

There are several problems with Carfax's argument, the most glaring being that it is premised on factual allegations from outside the four corners of the Complaint. Contrary to Carfax's inaccurate citation, Paragraph 2 of the Complaint does not "alleg[e] that CARFAX <u>works with</u> 'every U.S. state and the District of Columbia, as well as more than 5,000 police departments across the country.'" Mot. at 7 (emphasis added). Paragraph 2 of the Complaint states in full:

> 2.     Carfax is in the business of collecting and selling data from more than 139,000 sources, including the Department of Motor Vehicles ("DMV") for every U.S. state and the District of Columbia, as well as more than 5,000 police departments across the country. Carfax collects, markets, and sells not only vehicle history data, but also police reports relating to motor vehicle accidents. Specifically, Carfax maintains, markets, and sells access to a national database of more than 1.5 million police reports that contain "personal information" derived from "motor vehicle records" (as such terms are defined under the DPPA), which reports are available to purchase from Carfax through various websites, including but not limited to www.crashdocs.org and www.CarfaxForClaims.com.

Compl. ¶ 2. Plaintiff's allegation that Carfax collects data <u>from</u> states, the District of Columbia, and police departments across the country is very different from Carfax's contention that it "works with" such data sources.

Similarly, the Complaint does not allege that "law enforcement has chosen CARFAX as a method 'to disseminate information about the occurrence of motor vehicle accidents in the State.'" Mot. at 18 (quoting Md. Code, Pub. Safety § 2-306(a)). While the Court certainly may take judicial notice of Maryland law, the text of Section 2-306(a) makes no mention of Carfax, let alone declares that law enforcement has chosen Carfax to disseminate information about motor vehicle accidents in the State.

In truth, Carfax's argument is nothing more than an improper attempt to inject unfounded allegations from outside the four corners of the Complaint to support its Motion. Plaintiff disputes Carfax's self-serving allegations and, because they are not derived from <u>any</u> documents, let alone documents that may be considered on a motion to dismiss under Rule 12(b)(6), the Court should

reject them. *Witthohn*, 164 F. App'x at 396; *see also Gunn v. JPMorgan Chase Bank, N.A.*, No. 8:24-CV-0053-AAQ, 2024 WL 4451609, at *4 (D. Md. Oct. 8, 2024) ("When taking judicial notice of external documents, the Court may not take the truth of the underlying facts or consider the content of the documents to the extent that a defendant seeks to use them to provide factual evidence or to contradict a plaintiff's allegations." (cleaned up)).

Even if the Court were to consider Carfax's improper factual allegations at this stage, neither the plain language of the DPPA nor Maryland law support Carfax's argument that distributing Crash Reports is a permissible use under 18 U.S.C. § 2721(b)(14). Mot. at 17.[6] That subsection permits disclosure of personal information "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). Carfax argues that its sale of Crash Reports is permissible thereunder because Maryland law "require[s]" the Maryland State Police "to disseminate information about the occurrence of motor vehicle accidents in the State" and permits the Maryland State Police to "establish conditions under which [Crash Reports] may be made available on request to the public." Mot. at 17–18 (citing Md Code, Pub. Safety §§ 2-306(a), 2-308(b)(4)). Carfax submits that Wisconsin law is analogous and "[a] Wisconsin decision [] instructive on how the Maryland code . . . interact[s] with DPPA Section 2721(b)(14)." Mot. at 18 (citing *New Richmond News v. City of New Richmond*, 881 N.W.2d 339 (Wisc. App. 2016)).

The statutory texts of Section 2721(b)(14) and the cited Maryland laws do not support Carfax's position. The former limits disclosure to uses "specifically authorized" under state law

---

[6] Carfax also argues that "the DPPA does not prohibit the sale of personal information for commercial gain." Mot. at 16. But as Carfax's next sentence acknowledges, the DPPA permits such sales <u>only</u> "'for a use permitted under [18 U.S.C. § 2721(b)].'" *Id.* (brackets in original). Thus, sale of personal information for commercial gain is not, standing alone, one of the fourteen permissible uses enumerated under the DPPA.

that "relate[] to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). The Public Safety Article of the Maryland Code does not "specifically authorize[]" the Maryland State Police—or any other state agency or political subdivision—to utilize Carfax as a method of disseminating Crash Reports. Rather, the Public Safety Article narrowly authorizes the Secretary of the Maryland State Police to "establish conditions under which reports of specific motor vehicle accidents may be made available on request to the public." Md Code, Pub. Safety § 2-308(b)(4).[7] Such "conditions" are codified under COMAR 29.02.02.01, which simply identifies where Crash Reports may be obtained from the Maryland State Police and certain information that must be furnished. And, as discussed above, the regulation cannot be read in isolation—it must be read in the context of all Maryland regulations governing disclosure under the MPIA and the DPPA. *See supra* Section IV.A.

Carfax's reliance on Wisconsin law is misplaced. Wisconsin "'specifically mandates that law enforcement agencies provide the public with access to [Crash Reports],'" Mot. at 18 (quoting *New Richmond*, 881 N.W.2d at 352). In contrast, Maryland law <u>permits</u> the disclosure of Crash Reports subject to the MPIA and the DPPA and <u>requires</u> only that the Maryland State Police "disseminate <u>information</u> about the occurrence of motor vehicle accidents in the State"—not the underlying Crash Reports. Md Code, Pub. Safety § 2-306(a) (emphasis added). The Maryland State Police do so by aggregating de-identified data about motor vehicle accidents in the State and publishing such crash data, including in collaboration with the Maryland Department of Transportation through the State website <u>www.zerodeathsmd.gov</u>.[8]

---

[7] Carfax's inaccurate assertion that Sections 2-306(a) and 2-308(b)(4) of the Public Safety Article "explicitly require[] the dissemination of Crash Reports" is cut from whole cloth. Mot. at 18.

[8] *See, e.g.,* <u>www.zerodeathsmd.gov/resources/crashdata</u> (publishing motor vehicle accident data sourced from, inter alia, "the Maryland State Police Automated Crash Reporting System") (last accessed May 5, 2025).

The analysis of a similar issue by the district court in *Gaston* is instructive. In that case, the defendants argued that they had a permissible use to disclose Crash Reports because they were acting on behalf of law enforcement to make the Crash Reports available as "public records" under 18 U.S.C. § 2721(b)(1). *Gaston*, 483 F. Supp. 3d at 346.[9] The district court disagreed, noting that the disclosure of Crash Reports as public records under North Carolina law was expressly subject to the DPPA, and explained:

> This distinction is neither inconsistent nor remarkable. Indeed, the fundamental purpose of the DPPA is to limit the public disclosure of personal information contained in motor vehicle records. Therefore, while an accident report may be a public record subject to unlimited disclosure with respect to information in the report that is not personal information protected under the DPPA, it would completely undermine the purpose of the DPPA if a state could simply designate a document containing personal information subject to DPPA protection as a "public record" and thereby avoid complying with its restrictions. Simply put, the very essence of the DPPA is to limit the disclosure of information that had previously been made widely available as a public record; so, with due respect to Defendants' argument, it would be nonsensical to hold that a permissible governmental "function" under the DPPA is to publicly disclose personal information in a "public record."

*Id.* at 346.

The same rationale applies to 18 U.S.C. § 2721(b)(14) here. It would completely undermine the purpose of the DPPA if a state could simply specifically authorize the disclosure of Crash Reports containing personal information subject to DPPA protection and thereby avoid complying with its restrictions. Moreover, for the reasons discussed above, Maryland has not specifically authorized the disclosure of Crash Reports free from the protection of the DPPA; instead, the State recognizes that any disclosure of Crash Reports must be subject to the DPPA's non-disclosure requirements for personal information.

---

[9] *Gaston* is also instructive because Carfax cites 18 U.S.C. § 2721(b)(1) in the alternative to 18 U.S.C. § 2721(b)(14). *See* Mot. at 17 n.4.

Finally, the Court should reject Carfax's argument that allegations made on information and belief are insufficient to satisfy the pleading standard of Rule 8(a). Mot. at 19. This Court has long held that such allegations are sufficient to state a claim for relief, particularly where—as here—the facts are peculiarly within the possession or control of the defendant. *Salisbury Univ.*, 123 F. Supp. 3d at 768; *accord Malibu Media, LLC v. Doe*, No. 8:13-cv-00365-PWG, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession of the defendant . . . ." (marks omitted)); *see also Boykin v. KeyCorp*, 521 F.3d 202, (2d Cir. 2008) (allegations on information and belief that defendant treated unknown and unidentified individuals more favorably than plaintiff in loan application process sufficient under *Twombly* where the names and records of such persons, "if any," was "information particularly within [defendant's] knowledge and control").[10]

Plaintiff alleges upon information and belief that Carfax sold the Crash Report about Plaintiff's accident to third parties "without ascertaining whether the third-party purchasers were permitted under the DPPA to possess the personal information therein" and to purchasers that were not permitted under the DPPA to possess the personal information therein." Compl. ¶¶ 22–23.[11] These allegations are about Carfax's business; Carfax possesses and controls the documents

---

[10] Although *Boykin* predates *Iqbal*, the Second Circuit recently cited *Boykin* with approval when similarly holding that allegations on information and belief that defendant treated plaintiff worse than other similarly-situated teachers were sufficient at the pleading stage. *Mitchell v. N.Y.C. Dep't of Educ.*, No. 24-992, 2025 WL 978366, at *3 (2d Cir. Mar. 31, 2025) ("[Defendants'] contention that [plaintiff] failed to show comparable performance between himself and comparators can be explored during discovery, summary judgment, or trial, but they are not a basis to dismiss allegations of discrimination at the pleading stage of the case, when we must assume [plaintiff's] factual allegations to be true.").

[11] It is telling that Carfax does not deny these allegations despite introducing counterfactual allegations elsewhere in the Motion.

17

concerning these allegations and discovery of same will confirm their evidentiary basis. As such, that these allegations are made upon information and belief is "a permissible way to indicate a factual connection that [Plaintiff] reasonably believes is true." *Salisbury Univ.*, 123 F. Supp. 3d at 768. Carfax can seek to rebut these allegations in a summary judgment motion after discovery (though given its lack of denial it is apparent that Plaintiff's allegations are correct), but it cannot impose a heightened burden on Plaintiff at the motion to dismiss stage.

Further, and with respect to Plaintiff's allegation that Carfax did not make a reasonable inquiry as to whether third-party purchasers of the Crash Report were permitted under the DPPA to possess the personal information therein, Carfax's own public-facing website details how easily a person can purchase multiple Crash Reports from Carfax. *See* www.crashdocs.org/#/faq ("If you are an insurer, business or organization that needs to order multiple reports, please contact us to create a CARFAXforClaims.com account. Please include the business name, address, and phone number as well as your contact information. Once your account is established, you will be invoiced monthly for report purchases.") (last accessed May 5, 2025); *see also* Compl. ¶ 2 (alleging Carfax sells Crash Reports through various websites, including www.crashdocs.org and www.CarfaxForClaims.com). This is more than adequate to satisfy Plaintiff's pleading burden.

### C. The Crash Report Contains Plaintiff's Personal Information

The Court should reject Carfax's argument that Plaintiff has not and cannot allege that the Crash Report about his accident contains personal information that is protected from disclosure under the DPPA. Mot. at 19–20. Carfax's argument is two-fold: first, the Complaint purportedly fails to specifically identify the personal information in Plaintiff's Crash Report, and second, "that because the Crash Report is 'about Plaintiff's accident,' any information on the Crash Report is not personal information under the DPPA." Mot. at 20.

"When reviewing a motion to dismiss, the district court must accept the allegations in the complaint as true and construe those allegations and the reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007). Construing the factual allegations in the Complaint consistent with *Lowe*, the Court can reasonably infer Paragraph 21 to mean that the Crash Report contains Plaintiff's name and address, which are "personal information" under the DPPA. Compl. ¶ 21; *see also* Ex. A (confirming that the Crash Report contains Plaintiff's name and address, among other "personal information" under the DPPA). If, however, the Court determines this inference unreasonable, Plaintiff respectfully requests leave to file an amended complaint under Rule 15(a) to supplement the allegations regarding the contents of the Crash Report. *See Heym v. APG Hous., LLC*, No. 1:23-cv-02092-JRR, 2024 WL 2302306, at *9 (D. Md. May 21, 2024) (Rubin, J.) (granting request to amend complaint to correct pleading deficiencies under Rule 15(a) where request was made in opposition to motion to dismiss).

Carfax's second argument—that information in the Crash Report is not "personal information" under the DPPA—fails as a matter of law. The DPPA defines "personal information" to mean

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, <u>but does not include information on vehicular accidents</u>, driving violations, and driver's status.

18 U.S.C. § 2725(3) (emphasis added).

The clause beginning "but does not include" identifies specific information excluded from the definition of "personal information" rather than instances in which the definition does not apply. Said differently, "[t]he statute is structured such that it, first, defines the <u>types</u> of information that constitute "personal information" … after which it next identifies the <u>types</u> of information that

do not constitute "personal information." *Hatch v. Demayo*, No. 1:16-cv-925, 2017 WL 4357447, at *8 (M.D.N.C. Sept. 29, 2017) (emphasis added), *corrected on recons.*, 2018 WL 6003548 (M.D.N.C. Nov. 15, 2018), *and on recons. in part*, 2020 WL 91873 (M.D.N.C. Jan. 8, 2020); *see also Pavone v. Meyerkord & Meyerkord, LLC*, 118 F. Supp. 3d 1046, 1050 (N.D. Ill. 2015) (examples of "information on vehicular accidents" in Crash Reports that are distinct from "personal information" under the DPPA include "the date and time of the accident, the make, model, and year of each vehicle involved in the accident").

As here, the defendant in *Pavone* asserted that a Crash Report "constitutes information on a vehicular accident and therefore the DPPA does not protect it." 118 F. Supp. 3d at 1050. The district court concluded that defendant's characterization of the Crash Report failed because "it attempts to broadly classify the Report as a whole rather than recognize the different types of information contained with the Report. Indeed, the DPPA protects types of 'information', not types of reports." *Id.*; *see also id.* ("The Report at issue includes information that meets the DPPA's definition of 'personal information', e.g., names, addresses, in addition to the car accident information that does not meet the definition.").

Maryland law likewise recognizes a distinction between "personal information" and "information on vehicular accidents" for purposes of disclosing Crash Reports consistent with the MPIA and the DPAA. *See* Md. Code, Gen. Prov., § 4-101(h) (excluding "information on vehicular accidents" from definition of "personal information" for purposes of the MPIA and the DPPA). And the regulations governing the procedure for disclosing MVA records (which term is defined to include Crash Reports) require that personal information be redacted prior to disclosure. *See* COMAR 11.11.09.02 (defining "records" to include "accident reports"); COMAR 11.11.09.06(C) ("personal information and specific identifiers shall be redacted prior to disclosing the record").

Further evidence that Crash Reports remain subject to the DPPA's protections despite containing both personal information and information on vehicular accidents is found on the public-facing websites of the Maryland State Police and Baltimore Police Department pertaining to Crash Reports. *See Central Records Division*, Md. Dep't of State Police, https://mdsp.maryland.gov/Organization/Pages/SupportServicesBureau/CentralRecordsDivision. aspx (last visited May 5, 2025) ("This Division responds to specific requests for copies of . . . motor vehicle crash reports . . . maintained in the repository to legally entitled parties (emphasis added)); *Obtain a Police Report*, Baltimore Police Dep't, https://baltimorepolice.org/obtain-police-report (last visited May 5, 2025) ("In most cases, BPD will produce disclosable records [Crash Reports] within 30 days after receiving your request." (emphasis added)).

Neither the legislative history of the DPPA nor the case law cited in the Motion require a different statutory interpretation. *See* Mot. at 19–20.[12] The quoted statement by Rep. Moran simply reaffirms that information about a vehicular accident is a type of information separate from "personal information" under the DPPA. *See* 140 Cong. Rec. H2518-01, H2523, 1994 WL 140035 ("the amendment in no way affects access to accident information about the car or driver . . . . this amendment applies only to specified categories of personal information contained in motor vehicle records" (emphasis added)). Similarly, the remark by the district court in *Mattivi* that "Congress did not intend 'information on vehicular accidents' to be included within the Act's prohibition of disclosure of 'personal information'" is consistent with—not antithetical to—Plaintiff's statutory interpretation. *Mattivi*, 2002 WL 31949898, at *4.

---

[12] Again, Carfax does not allege that the statutory language of the DPPA is ambiguous, so its reliance on legislative history is improper. *Ayes*, 473 F.3d at 108.

And while the majority opinion in *Arkansas State Police v. Wren* does support Carfax's position, Plaintiff respectfully submits that Justice Baker's dissent in the case reflects the correct statutory interpretation on this issue. *See* 491 S.W.3d 124, 128 (Ark. 2016) (Baker, J., dissenting). Justice Baker observed that Arkansas law (like Maryland law) requires that specific information about a motor vehicle accident be included in a Crash Report, and that such information falls outside the type of information that constitutes "personal information" under the DPPA. *Id.* at 132. She concluded that "the phrase 'information on vehicular accidents' as used in the DPPA means information regarding the specifics of the actual accident; the cause, conditions, persons, and vehicles" and such information "is excepted from the DPPA, and does not have protection from the DPPA." *Id.* at 132–33. Justice Baker's well-reasoned analysis—which discusses at length not only the statutory texts of the DPPA and Arkansas law but also the federal district court decisions in *Pavone*, *Mattivi*, and *Whitaker*—makes clear that the majority opinion in *Wren* is an outlier with no precedential value in this Court.

Thus, it is Carfax—not Plaintiff—that "misinterpret[s]" the definition of "personal information" under the DPPA. As Plaintiff has demonstrated throughout this memorandum, Carfax relies on inapposite case law and ignores the fact that the DPPA protects personal information that is unequivocally present in Plaintiff's Crash Report, and Carfax simultaneously asks this Court to read entire provisions out of the text of the DPPA. The Court should reach the same result as the district courts in *Hatch* and *Pavone* and reject Carfax's arguments.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Benjamin Lucas respectfully requests that the Court deny Defendant Carfax, Inc.'s Motion to Dismiss the Complaint. While Plaintiff believes his operative Complaint categorically states a claim under the plain text of the DPPA and existing precedent, in the alternative, he requests that the Court grant leave to file an amended complaint pursuant to Federal Rule 15(a) of Civil Procedure.


Dated: May 9, 2025

                                     Respectfully submitted,

                                     HILGERS GRABEN PLLC

                                     <u>*/s/ Michael Burns*</u>
                                     Michael Burns (D. Md. Bar # 20687)
                                     601 Pennsylvania Ave. NW
                                     South Building Suite 900
                                     Washington, D.C. 20004
                                     202-985-1664
                                     mburns@hilgersgraben.com

                                     and

                                     Edward Zebersky (admitted *pro hac vice*)
                                     Berger Singerman LLP
                                     1450 Brickell Ave., Suite 1900
                                     Miami, FL
                                     954-712-5180
                                     ezebersky@bergersingerman.com

                                     *Counsel for Plaintiff*