## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

BENJAMIN LUCAS,

               Plaintiff,

  v.

CARFAX, INC.,

               Defendant.

Case No. 8:25-cv-00632-JRR

## DEFENDANT CARFAX, INC.'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

I.    INTRODUCTION ............................................................................... 1

II.   ARGUMENT ..................................................................................... 2

      A.    The Complaint Should Be Dismissed Because Plaintiff Has Not
            Plausibly Alleged, and Cannot Plausibly Allege, Disclosure of
            Personal Information. ......................................................................... 2

            1.    The Complaint Contains No Allegations as to Information
                  on the Crash Report, and Plaintiff Cannot Amend Through
                  Briefing. ..................................................................................... 2

            2.    Plaintiff's Narrow Interpretation of Accident Information
                  Would Render Parts of the DPPA Meaningless. ........................ 3

      B.    The Complaint Should Also Be Dismissed Because Plaintiff Has
            Not, and Cannot, Sufficiently Allege that CARFAX Had an
            Impermissible Purpose. ..................................................................... 6

            1.    Plaintiff's Complaint Fails to Allege an Impermissible
                  Purpose. ..................................................................................... 7

            2.    Plaintiff's Complaint Contains No Allegations Describing
                  CARFAX's Process to Ascertain Purposes, and Plaintiff
                  Cannot Selectively Quote CARFAX Websites as a
                  Substitute for Well-Pleaded Allegations. ................................... 7

            3.    Maryland Law Authorizes Distribution of Crash Reports........ 10

      C.    The Complaint Should Be Dismissed Because CARFAX Never
            Obtained or Disclosed Information from a Motor Vehicle
            Record ............................................................................................. 12

III.  CONCLUSION ................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMA Sys., LLC v. 3B Tech, Inc.*,
No. 1:21-cv-01472-JRR, 2023 WL 7410854 (D. Md. Nov. 9, 2023).........................................3

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ...............................................................13, 14, 15

*Arkansas State Police v. Wren*,
491 S.W.3d 124 (Ark. 2016).................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................7, 13

*Degraw v. Wike*,
No. 2:10-cv-00435, 2011 WL 3268578 (E.D. Va. May 9, 2011).............................................9

*Doe v. Salisbury Univ.*,
123 F.Supp.3d 748 (D. Md. 2015) .........................................................8

*Durham v. City of Charlotte*,
No. 3:21-cv-00638, 2024 WL 4279513 (W.D.N.C. Sept. 24, 2024).....................................15

*Dye v. Meta Platforms, Inc.*,
No. 5:23-cv-509-BO-BM, 2024 WL 2125602 (E.D.N.C. May 10, 2024)..............................13

*Fontanez v. Skepple*,
563 F.App'x 847 (2d Cir. 2014) ...............................................................13, 14, 15

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) .................................................................15

*Gaston v. LexisNexis Risk Sols., Inc.*,
483 F.Supp.3d 318 (W.D.N.C. 2020) ..............................................................12, 15

*Georgion v. Bank of Am. Corp.*,
No. 3:22-cv-00618-RJC-WCM, 2023 WL 6053079 (W.D.N.C. Aug. 29, 2023).....................9

*Graczyk v. W. Pub. Co.*,
660 F.3d 275 (7th Cir. 2011) .................................................................7

*Hanley v. State Farm Mut. Auto. Ins. Co.*,
No. 1:22-cv-00809-JRR, 2024 WL 2113630 (D. Md. May 10, 2024) .....................................5

*Hatch v. Demayo*,
    No. 1:16-cv-00925, 2017 WL 4357447 (M.D.N.C. Sept. 29, 2017) ........................................5

*Kashdan v. George Mason Univ.*,
    70 F.4th 694 (4th Cir. 2023) ................................................................................................8

*Lasica v. Am. Online, Inc.*,
    No. 15-cv-04230-GW-FFM, 2015 WL 12791495 (C.D. Cal. Sept. 3, 2015)..........................9

*Maracich v. Spears*,
    675 F.3d 281 (4th Cir. 2012) ............................................................................................6, 7

*Mattivi v. Russell*,
    No. 01-cv-00533, 2002 WL 31949898 (D. Colo. Aug. 2, 2002).....................................4, 6, 15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ..........................................................................................2, 3, 7

*New Richmond News v. City of New Richmond*,
    881 N.W.2d 339 (Wisc. App. 2016) ...........................................................................10, 11, 12

*O'Brien v. Quad Six, Inc.*,
    219 F.Supp.2d 933 (N.D. Ill. 2002) ...................................................................................13

*Pavone v. Meyerkord & Meyerkord, LLC*,
    118 F.Supp.3d 1046 (N.D. Ill. 2015) ..................................................................................5

*Pharm. Coal. for Patient Access v. United States*,
    126 F.4th 947 (4th Cir. 2025) ............................................................................................4

*Senderra RX Partners, LLC v. Blue Cross & Blue Shield of N. Carolina*,
    No. 1:18-cv-00871, 2019 WL 9633642 (M.D.N.C. May 23, 2019).........................................9

*Siegler v. Best Buy Co. of Minnesota*,
    519 F.App'x 604 (11th Cir. 2013) .............................................................................13, 14, 15

*Witthohn v. Fed. Ins. Co.*,
    164 F.App'x 395 (4th Cir. 2006) ........................................................................................3

**Statutes**

18 U.S.C. § 2721(a) ....................................................................................................................8

18 U.S.C. § 2721(b)(14) ...................................................................................................10, 11, 12

18 U.S.C. § 2721(c) ..............................................................................................................7, 14

18 U.S.C. § 2724....................................................................................................................8

18 U.S.C. § 2725(3) ...........................................................................................................1, 2, 4, 5

Freedom of Information Act, 5 U.S.C. § 552 ...................................................................................6

Maryland Public Information Act Manual (19th ed., Dec. 2024),
    https://www.marylandattorneygeneral.gov/Pages/OpenGov/piamanual.aspx........................11

Md. Code, Pub. Safety § 2-308...............................................................................................10, 11

Privacy Act of 1974, 5 U.S.C. § 552a.............................................................................................13

Wis. Stat. § 346.70(4)(f) ................................................................................................................10

**Other Authorities**

*Collision Reports*, Chevy Chase Village, MD,
    https://www.chevychasevillagemd.gov/373/Collision-Reports...............................................11

*Crashdocs.org Website Terms of Use*, https://www.crashdocs.org/#/termsOfUse ........................9

VHS Terms and Conditions,
    https://static.carfax.com/mcs/pdf/big/docs/VhsTerms.pdf .......................................................9

I.     **INTRODUCTION**

Plaintiff's Opposition is an effort to obfuscate the legal issues before the Court and improperly re-plead his deficient Complaint. The Complaint alleges only that CARFAX, Inc. ("CARFAX"): (1) purchased a Crash Report about Plaintiff's vehicular accident from a law enforcement agency; and (2) subsequently disclosed the Crash Report to unnamed third parties who had unidentified impermissible purposes for such purchases. As explained in CARFAX's Motion ("Mot. Mem.", ECF No. 10-1), these threadbare and conclusory allegations do not suffice to plead a cause of action under the DPPA, 18 U.S.C. §§ 2721–25. Plaintiff's Opposition ("Opp.", ECF No. 16-1), instead of applying the text of the DPPA to the Complaint's allegations, concedes that the allegations are deficient by improperly attempting to amend the Complaint. Plaintiff also misinterprets the DPPA in ways that render multiple express statutory exceptions superfluous. Plaintiff's obfuscations do not rebut any of the grounds for dismissal established in the Motion. Specifically, the Complaint should be dismissed with prejudice for the following reasons:

***First***, Plaintiff's Complaint does not plausibly allege (and cannot allege) that CARFAX obtained or disclosed Plaintiff's "personal information." 18 U.S.C. § 2725(3). Plaintiff makes an improper attempt to amend his Complaint through briefing to specify what individually identifying information was allegedly obtained or disclosed. Even if the Court were to consider such belated pseudo-allegations, the definition of personal information under the DPPA explicitly excludes "information on vehicular accidents, driving violations, and driver's status."

***Second***, Plaintiff has not plausibly alleged (and cannot allege) that any disclosure by CARFAX was for any impermissible purpose under the DPPA. Plaintiff bears the burden of alleging an impermissible purpose, but his Complaint makes no specific allegations as to what impermissible purpose any alleged purchaser had, nor makes any specific allegations as to how

CARFAX's efforts to determine purchaser purposes is insufficient.  Moreover, Maryland's public safety law authorizes disclosures of Crash Reports for a public safety purpose.

*Third*, Plaintiff has not plausibly alleged (and cannot allege) that CARFAX obtained or disclosed information from a "motor vehicle record."  § 2725(3).  The meaning of "motor vehicle record" under the DPPA, based on the Privacy Act of 1974, is limited to records maintained by a DMV and case law makes clear that the definition of "motor vehicle record" does not include (i) any record not created by a DMV, (ii) any record created by a DMV for possession by a law enforcement agency or (iii) a driver's license.  Three Courts of Appeals have reached the same conclusion based on statutory construction principles that Plaintiff's Opposition ignores.

## II.  ARGUMENT

### A.  The Complaint Should Be Dismissed Because Plaintiff Has Not Plausibly Alleged, and Cannot Plausibly Allege, Disclosure of Personal Information.

#### 1.  The Complaint Contains No Allegations as to Information on the Crash Report, and Plaintiff Cannot Amend Through Briefing.

As established in CARFAX's Motion, Plaintiff's Complaint contains only a threadbare recital that CARFAX obtained and disclosed "Plaintiff's personal information" in the Crash Report without any factual allegations of what personal information—as defined by the DPPA—was obtained or disclosed.  *See* Mot. Mem. at 19–20.  Such a conclusory recitation of an element of a cause of action is insufficient to survive a motion to dismiss.  *See id.*; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009) (affirming dismissal).

In response, Plaintiff points to what he claims—without affidavit or sworn statement—is a redacted version of the Crash Report attached as an exhibit to his Opposition and argues that this sufficiently identifies information allegedly disclosed by CARFAX.  Opp. at 19; *see also id.* at 3 (describing Exhibit A to Opposition).  However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," including exhibits to those briefs in

opposition. *AMA Sys., LLC v. 3B Tech, Inc.*, No. 1:21-cv-01472-JRR, 2023 WL 7410854, at *4 (D. Md. Nov. 9, 2023) (Rubin, J.) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D. Md. 1991)).  The Court thus should not consider the improperly attached exhibit filed by Plaintiff in opposition to the motion to dismiss.  *See AMA Sys.*, 2023 WL 7410854, at *4 ("Plaintiffs may not amend the Second Amended Complaint by alleging new facts in, and attaching exhibits to, their Opposition. The court, therefore, declines to consider the thirteen exhibits filed by Plaintiffs in the Response in Opposition to [defendant]'s Motion for purposes of resolving the Motion to Dismiss.").[1]  Plaintiff also argues that the Court may "infer Paragraph 21 [of the Complaint] to mean that the Crash Report contains Plaintiff's name and address." Opp. at 19.  But Paragraph 21 contains no allegations of what information is in the Crash Report other than information "about the accident."  Compl. ¶ 21; *see also id.* ¶ 22 ("about Plaintiff's accident").

Because Plaintiff failed to plausibly allege an element of a DPPA claim, the Complaint should be dismissed.  *See* Mot. Mem. at 19–20; *Nemet Chevrolet*, 591 F.3d at 255, 258.  However, even if the Court were to consider the improperly attached exhibit, Plaintiff's Complaint still requires dismissal for the reasons discussed below.

### 2.    Plaintiff's Narrow Interpretation of Accident Information Would Render Parts of the DPPA Meaningless.

As established in CARFAX's Motion, Plaintiff's Complaint should also be dismissed because the Crash Report is alleged to be information on a vehicular accident, and, by definition, "information on vehicular accidents" is not "personal information" under the DPPA.  *See*

---

[1] In a footnote, Plaintiff argues that this Court may consider Exhibit A because courts may consider public records and documents referenced in a complaint in deciding a motion to dismiss.  *See* Opp. at 3 n.1 (quoting *Witthohn v. Fed. Ins. Co.*, 164 F.App'x 395 (4th Cir. 2006)).  But *Witthohn* does not disturb the rule that a complaint may not be amended through briefing, as *Witthohn* considered whether documents attached as exhibits ***to a motion to dismiss***—not an opposition—may be considered without converting the motion into one for summary judgment.  *See* 164 F.App'x at 396–97 (affirming dismissal; "the court's consideration of [exhibits attached to the motion to dismiss] did not convert Appellees' motion to dismiss into a motion for summary judgment").

Mot. Mem. at 20–21; 18 U.S.C. § 2725(3); *Mattivi v. Russell*, No. 01-cv-00533, 2002 WL 31949898, at *4 (D. Colo. Aug. 2, 2002) (granting summary judgment to defendant on DPPA claim because crash reports do not contain personal information under the DPPA).

Under the DPPA, "personal information" is defined generally as "information that identifies an individual," except it "does not include information on vehicular accidents, driving violations, and driver's status."  18 U.S.C. § 2725(3).  Plaintiff argues that the structure of § 2725(3) means that "information on vehicular accidents" is limited to information such as the time of the accident and the car models involved—but not information that identifies an individual. *See* Opp. at 19–20, 22 (citing *Hatch v. Demayo*, No. 1:16-cv-00925, 2017 WL 4357447, at *8 (M.D.N.C. Sept. 29, 2017); *Pavone v. Meyerkord & Meyerkord, LLC*, 118 F.Supp.3d 1046, 1050 (N.D. Ill. 2015); *Arkansas State Police v. Wren*, 491 S.W.3d 124, 128 (Ark. 2016) (Baker, J., dissenting)).  This interpretation is unworkable and would render parts of the DPPA meaningless.

The structure of § 2725(3) dictates that "information on vehicular accidents, driving violations, and driver's status" must be "information that identifies an individual."  Otherwise, § 2725(3)'s exclusion of that information from the definition of "personal information" would be superfluous.  In other words, there is no purpose in excluding "vehicular accidents, driving violations, and driver's status" from "information that identifies an individual," if the driver is not identified.  Plaintiff's proposed meaning of "information on vehicular accidents"—e.g., the time of the accident and the car models involved—is information that does not "identif[y] an individual" unlike the other examples in § 2725(3).  The only interpretation of § 2725(3) that gives effect to every term, including the exceptions, is that "information on vehicular accidents, driving violations, and driver's status" includes information that identifies an individual such as name and address. *See, e.g.*, *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947, 957 (4th Cir.

- 4 -

2025) ("[S]tatutes should be interpreted in ways that avoid superfluity, including specifically of statutory exceptions."); *Hanley v. State Farm Mut. Auto. Ins. Co.*, No. 1:22-cv-00809-JRR, 2024 WL 2113630, at *8–9 (D. Md. May 10, 2024) (Rubin, J.) (granting summary judgment; rejecting plaintiff's interpretation which would render words surplusage).

As explained in CARFAX's Motion, "[t]he exception for vehicular accidents, driving violations, and driver's status would be meaningless if it could not identify a driver" as Plaintiff now suggests. Mot. Mem. at 20. CARFAX also pointed out that the DPPA was not meant to "stop anyone from finding out another person's driving record, accidents, or status." *Id.* at 20–21 (quoting 140 Cong. Rec. H2518-01, H2523, 1994 WL 140035 (Apr. 20, 1994) (statement of Rep. Moran)). Plaintiff's Opposition does not even attempt to respond with any explanation as to how a person can obtain another's "driving violations, and driver's status" without disclosing information identifying the driver, such as the driver's name.

Plaintiff's cited cases similarly do not address the problems with Plaintiff's interpretation and the fact that it renders § 2725(3)'s exceptions superfluous. *See generally Hatch*, 2017 WL 4357447, at *8; *Pavone*, 118 F.Supp.3d at 1050. Plaintiff holds up the dissent's analysis in *Wren* as "well-reasoned." Opp. at 22 (citing *Wren*, 491 S.W.3d at 128 (Baker, J., dissenting)). But "significant to the analysis" of the dissent is Arkansas law addressing the content of Arkansas Crash Reports, *id.* at 131–32, which does not inform the meaning of the federal DPPA. Moreover, the dissent in *Wren* concluded that "'information on vehicular accidents' as used in the DPPA means information regarding the specifics of the actual accident; the cause, conditions, ***persons***, and vehicles." *Id.* at 132 (emphasis supplied). Nowhere does the dissent explain how "information on vehicular accidents" can include "persons," but not information sufficient to identify the person, such as the person's name. In sum, Plaintiff's reliance on a "well-reasoned" dissent only highlights

- 5 -

the absurdity of Plaintiff's interpretation and the correctness of the opposite conclusion: "information on vehicular accidents, driving violations, and driver's status" necessarily includes personally identifying information such as names and addresses.

Finally, Plaintiff suggests that Maryland's Public Information Act, Md. Code, Gen. Prov., tit. 4—analogous to the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552—may be more restrictive than the DPPA as to what information state government agencies may release in response to a FOIA-type request. *See* Opp. at 20. Even if Maryland had a more restrictive FOIA-type statute, that would be irrelevant to the interpretation of "accident information" under the DPPA, which is a matter of federal law. *See Mattivi*, 2002 WL 31949898, at *3 ("interpretation of the DPPA is a matter of federal law, and Colorado's statutory scheme is not controlling").

Because any information contained in the Crash Report is accident information that cannot be personal information under the DPPA as a matter of law, the Court should dismiss Plaintiff's claim with prejudice. *See* Mot. Mem. at 20–21; *Mattivi*, 2002 WL 31949898, at *4.

## B. The Complaint Should Also Be Dismissed Because Plaintiff Has Not, and Cannot, Sufficiently Allege that CARFAX Had an Impermissible Purpose.

CARFAX's Motion established, and Plaintiff does not dispute, that it is Plaintiff's burden to plausibly allege an impermissible purpose—not CARFAX's burden to point to a permissible purpose. *See* Mot. Mem. at 2; *Maracich v. Spears*, 675 F.3d 281, 299 (4th Cir. 2012). Nevertheless, CARFAX's Motion established that there is a permissible purpose on the face of the Complaint: distribution of Crash Reports as specifically authorized by Maryland public safety law.

Plaintiff's Opposition fails to (1) identify any plausible allegation of an impermissible purpose, (2) identify any plausible allegation regarding the insufficiency of CARFAX's process to determine whether purchasers have a permissible purpose and (3) rebut the plain language of

Maryland public safety law, which expressly authorizes the distribution of Crash Reports. Each of these deficiencies necessitates dismissal of the Complaint as further addressed below.

### 1.    Plaintiff's Complaint Fails to Allege an Impermissible Purpose.

As established in CARFAX's Motion, under the DPPA, a person who obtains personal information may redisclose that information—even for commercial gain—to another person so long as the other person has his or her own permissible use for the information. *See* Mot. Mem. at 16–17; 18 U.S.C. § 2721(c); *Graczyk v. W. Pub. Co.*, 660 F.3d 275, 279–81 (7th Cir. 2011) ("[T]he DPPA does not prohibit [defendant] from reselling records it obtains from state DMVs to persons with permissible uses"; affirming dismissal of DPPA complaint). It is Plaintiff's burden to allege and establish that a purpose is impermissible, not CARFAX's burden to establish a permissible purpose. *See Maracich*, 675 F.3d at 299. A necessary element of Plaintiff's DPPA claim is thus that CARFAX knowingly disclosed the Crash Report to a user who had an impermissible purpose.

Plaintiff's Complaint contains no allegation as to what impermissible purpose any person had when obtaining Plaintiff's Crash Report from CARFAX. Nor does Plaintiff's Opposition identify any impermissible purpose. Indeed, the Complaint only has threadbare recitals that disclosures were done for ***unspecified*** purposes, and those purposes were not permitted under the DPPA. *See, e.g.*, Compl. ¶ 45 ("Carfax knowingly obtained and/or disclosed . . . personal information . . . for a purpose not permitted under the DPPA."). These rote recitations of statutory language are prime examples of allegations insufficient to survive a motion to dismiss under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Nemet Chevrolet*, 591 F.3d at 255, 258.

### 2.    Plaintiff's Complaint Contains No Allegations Describing CARFAX's Process to Ascertain Purposes, and Plaintiff Cannot Selectively Quote CARFAX Websites as a Substitute for Well-Pleaded Allegations.

The Complaint alleges that CARFAX has a duty to "exercise reasonable care in responding to requests to purchase personal information derived from motor vehicle records," and that

CARFAX breached that duty "upon information and belief" by "fail[ing] to make a reasonable inquiry as to" the purposes of Crash Report purchasers. Compl. ¶ 28. There is no basis in the DPPA's text or structure to impose a "reasonable care" negligence standard, and no court in this Circuit has held otherwise. The DPPA prohibits only ***knowing*** disclosures, not negligent disclosures. *See* 18 U.S.C. § 2721(a) ("A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not ***knowingly*** disclose or otherwise make available . . ."); *id.* § 2724(a) ("A person who ***knowingly*** obtains, discloses . . ."). Even if the DPPA imposed a duty of reasonable care on CARFAX (which it does not), the Complaint is deficient because it contains ***no allegations*** as to what process CARFAX performs to ascertain a purchaser's purpose, let alone how that process is unreasonable. *See* Mot. Mem. at 19 ("Nowhere in the Complaint is there an allegation as to . . . what effort CARFAX makes to determine the purchaser's use.").

Plaintiff's Opposition does not point to any allegations in the Complaint describing CARFAX's process. Instead, Plaintiff makes two meritless arguments. ***First***, Plaintiff contends that its legal conclusion couched as a factual allegation—that "upon information and belief" CARFAX's process is unreasonable–is sufficient because facts "are peculiarly within the possession or control of the defendant." Opp. at 17–18 (citing *Doe v. Salisbury Univ.*, 123 F.Supp.3d 748, 768 (D. Md. 2015)). Plaintiff's own cited caselaw confirms that a vague, conclusory allegation that a defendant has a defective process—without any underlying factual allegations—is insufficient, even where that allegation is made upon information and belief. *See* 123 F.Supp.3d at 768 (holding that allegation "[u]pon information and belief, procedural defects were motivated by gender bias" would be insufficient because "[a] plaintiff may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.'"); *see also Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023)

("Although a plaintiff may initially plead parts of his case 'upon information and belief,' his allegations may not be wholly conclusory."; affirming dismissal with prejudice)

Additionally, Plaintiff cannot rely on pleading upon information and belief here because facts about CARFAX's process are not "peculiarly within the possession or control of the defendant."  Plaintiff's theory of the case is that third-party purchasers can purchase Crash Reports "through various websites" operated by CARFAX.  Compl. ¶¶ 2–3.  In other words, the facts about CARFAX's process are available to anyone who visits a website and attempts to purchase a Crash Report.[2]  Publicly available facts cannot be the subject of pleading on information and belief.  *See, e.g.*, *Degraw v. Wike*, 2011 WL 3268578, at *2 (E.D. Va. May 9, 2011) (disregarding allegations on information and belief ascertainable by public; dismissing complaint with prejudice).

*Second*, and tellingly, Plaintiff's Opposition attempts "to satisfy Plaintiff's pleading burden" by selectively quoting portions of a CARFAX webpage not incorporated into the Complaint.  *See* Opp. at 18 (quoting www.crashdocs.org/#/faq; citing Compl. ¶ 2).  It is well established that a reference to a website in a Complaint does not incorporate the content of every page of that website.[3]  Further, Plaintiff's selective quotation of a CARFAX webpage omits portions of the websites related to the DPPA and purposes of third-party purchasers.  *See, e.g.*, *Crashdocs.org Website Terms of Use*, https://www.crashdocs.org/#/termsOfUse  ("Before you can access a Report, you will be required to certify that your access and use of such Report will be [in] compliance with: [] all applicable legal restrictions or requirements . . . ."); VHS Terms and

---

[2] Neither the Complaint nor the Opposition explains how this copy of the Crash Report was obtained.  If the Crash Report was purchased from CARFAX, Plaintiff should have pled this, but did not.  As established in the Motion, Plaintiff has not identified a purchaser of the Crash Report.

[3] *See, e.g.*, *Lasica v. Am. Online, Inc.*, 2015 WL 12791495, at *3 n.2 (C.D. Cal. Sept. 3, 2015) (declining to consider specific webpages not referenced in complaint on motion to dismiss); *Georgion v. Bank of Am. Corp.*, 2023 WL 6053079, at *3 (W.D.N.C. Aug. 29, 2023) (granting motion to dismiss; considering language from webpage "only to the extent it is quoted in the Complaint"); *Senderra RX Partners, LLC v. Blue Cross & Blue Shield of N. Carolina*, 2019 WL 9633642, at *5 (M.D.N.C. May 23, 2019) (declining to consider webpage on motion to dismiss where only reference in complaint was inclusion of webpage URL in complaint exhibit).

Conditions, https://static.carfax.com/mcs/pdf/big/docs/VhsTerms.pdf (governing CARFAX for Claims) ("Restrictions specific to Police Reports"; "Police Reports Permitted Use").

For the reasons above, even if a reasonable care duty were applied (and it should not be), the Complaint does not plausibly allege that CARFAX breached any duty of care to reasonably ascertain the purposes of Crash Report purchasers.

### 3.    Maryland Law Authorizes Distribution of Crash Reports.

Section 2721(b)(14) of the DPPA provides that a permissible purpose for obtaining or disclosing personal information is "any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14).    CARFAX's Motion identified that Maryland's public safety law specifically authorizes disclosure of Crash Reports.    *See* Md. Code, Pub. Safety § 2-308(b)(4). Plaintiff responds by misstating the law no fewer than four times in his Opposition.

***First***, Plaintiff analyzes whether Maryland "requires" the dissemination of Crash Reports, or merely authorizes it, in an attempt to distinguish the only on-point case applying 18 U.S.C. § 2721(b)(14): the decision of a Wisconsin appellate court in *New Richmond News v. City of New Richmond*, 881 N.W.2d 339, 342 (Wisc. App. 2016).    *See* Opp. at 15.    The text of the DPPA is clear: all that is required is that the purpose be "specifically authorized."    18 U.S.C. § 2721(b)(14). Maryland and Wisconsin law both plainly authorize dissemination of Crash Reports to the public. *Compare* Md. Code, Pub. Safety § 2-308(b)(4) ("By rule, the Secretary may establish conditions under which reports of specific motor vehicle accidents may be made available on request to the public.") *with* Wis. Stat. § 346.70(4)(f) ("[A]ny person may . . . subject to such orders or regulations as the custodian thereof prescribes, examine or copy such uniform traffic accident reports . . ."). Thus *New Richmond News* is indistinguishable in its analysis of § 2721(b)(14).

***Second***, Plaintiff spends much space addressing whether the four corners of the Complaint demonstrate the Maryland State Police has specifically designated "Carfax as a method of disseminating Crash Reports." *See* Opp. at 12–15. Although CARFAX is in fact used by Maryland officials to disseminate Crash Reports as described in the Complaint and Motion,[4] the relevant inquiry is much simpler. The DPPA provides that a permissible purpose for the dissemination of "personal information" is "any other use specifically authorized under the law of the State that holds the record" so long as the use is related to public safety. 18 U.S.C. § 2721(b)(14). Maryland law in turn authorizes distribution of Crash Reports, without requiring redactions of personal information, because those reports are a matter of public safety. *See* Md. Code, Pub. Safety § 2-308(b)(4). Maryland law thus provides a permissible purpose for its police agencies' (or DMV's) distribution of personal information contained in Crash Reports to third parties, such as CARFAX, and for third parties' subsequent distribution of personal information contained in a Crash Report. *See New Richmond News v. City of New Richmond*, 881 N.W.2d 339, 352 (holding that state agency's distribution of Crash Reports to a newspaper would not violate DPPA because of § 2721(b)(14) without analyzing subsequent use or disclosure by newspaper).

***Third***, Plaintiff contends that Maryland law, including its Public Information Act, "narrowly authorizes" disclosure of Crash Reports and "require[s] that personal information be redacted prior to disclosure." *See* Opp. at 15, 20. Not so. The Maryland Public Information Act Manual, a document cited by Plaintiff, makes clear that disclosed Crash Reports ***must contain*** personal information, including the driver's name. *See* Maryland Public Information Act Manual § 3-18 (19th ed., Dec. 2024) ("Md. Code Ann., Pub. Safety §§ 2-306, 2-308, and COMAR

---

[4] *See* Mot. Mem. at 17–18; *see also, e.g., Collision Reports*, Chevy Chase Village, MD, https://www.chevychasevillagemd.gov/373/Collision-Reports ("[City] has partnered with CARFAX and collision reports are now available through the CRASHDOCS website.").

29.02.02.01 (governing the public dissemination of motor vehicle accident reports and requiring certain information to be on those reports, including the driver's name).").

**Fourth**, Plaintiff quotes at length a decision analyzing a different section of the DPPA— § 2721(b)(**1**)—to make the argument that § 2721(b)(**14**) would "completely undermine the purpose of the DPPA if a state could simply specifically authorize the disclosure of Crash Reports."  Opp. at 16 (quoting *Gaston v. LexisNexis Risk Sols.*, 483 F.Supp.3d 318 (W.D.N.C. 2020)).  But it is Plaintiff's interpretation that would undermine the purposes motivating the enactment of the DPPA and § 2721(b)(14), *i.e.,* public safety.  Section 2721(b)(14) expressly allows states to authorize disclosure of "personal information" from "motor vehicle records" for purposes "related to the operation of a motor vehicle or public safety."  § 2721(b)(14).  State FOIA-type laws, like the one at issue in *Gaston*, are not laws related to public safety and thus do not implicate § 2721(b)(14).  Yet the DPPA is not toothless just because states can and have authorized disclosure of Crash Reports.  The DPPA generally applies to "personal information" and "motor vehicle records" besides Crash Reports (and Crash Reports are not motor vehicle records or personal information under the DPPA in any event).  As an example, the DPPA does not allow states to authorize the disclosure of personal information such as driver's license photos, for any purpose.  Maryland's Public Safety code is clearly related to public safety.  *See New Richmond*, 881 N.W.2d at 352 ("disclosure of accident reports . . . is related to the operation of a motor vehicle or public safety.").

Because Maryland public safety law authorizes the distribution of Crash Reports, the Complaint should be dismissed with prejudice.

### C. The Complaint Should Be Dismissed Because CARFAX Never Obtained or Disclosed Information from a Motor Vehicle Record.

The Complaint alleges that CARFAX acquired Plaintiff's Crash Report from a law enforcement agency—not the MVA—and that this Crash Report is a "motor vehicle record" from

which CARFAX subsequently disclosed personal information. *See* Compl. ¶ 22. As established in CARFAX's Motion, the term "record" in the DPPA is understood to have the same meaning as the Privacy Act of 1974: "information about an individual that is ***maintained by*** an agency," here the state DMV. *See* 5 U.S.C. § 552a(a)(4); Mot. Mem. at 12–13; *see also Dye v. Meta Platforms, Inc.*, No. 5:23-cv-509-BO-BM, 2024 WL 2125602, at *3 (E.D.N.C. May 10, 2024) ("The term 'record' is defined by the Privacy Act of 1974, which the DPPA is intended to reflect, as 'information about an individual that is maintained by an agency.'").

Nowhere does Plaintiff's Opposition address the significance of the Privacy Act of 1974 in interpreting the meaning of "record" in the DPPA. *See generally* Opp. Instead, Plaintiff emphasizes that the Complaint alleges that the Crash Report was created by the MVA.[5] Opp. at 10. But as several courts, including three Courts of Appeals have made clear, whether information was created by a DMV is not the relevant standard. Driver's licenses also are created by DMVs, but because they are maintained elsewhere (by the license holders), they are not "motor vehicle records." *See* Mot. Mem. at 13–15; *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1260 (9th Cir. 2019); *Siegler v. Best Buy Co. of Minnesota*, 519 F.App'x 604 (11th Cir. 2013); *Fontanez v. Skepple*, 563 F.App'x 847 (2d Cir. 2014); *O'Brien v. Quad Six, Inc.,* 219 F.Supp.2d 933, 934 (N.D. Ill. 2002) (accepting argument that "a driver's license is not a 'motor vehicle record' because it is not in the [state motor vehicle] agency's custody"). Plaintiff protests that these decisions "stem from allegations" regarding "a driver's license—not a Crash Report," but nothing in the reasoning

---

[5] In several instances, Plaintiff's Opposition places significance on CARFAX not using its Motion to Dismiss to deny allegations in the Complaint. *See, e.g.*, Opp. at 2 ("Finally, what Carfax doesn't say in the Motion is telling. Carfax does not deny . . ."). Of course, a motion to dismiss is not the place to deny allegations, as the Court must accept as true all well-pleaded allegations. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To remove any doubt invited by Plaintiff: ***the MVA does not create Crash Reports***, and thus Plaintiff's DPPA claim is fatally flawed on the facts.

of *Andrews*, *Siegler*, or *Fontanez* is specific to driver's licenses, nor does Plaintiff point to anything which would lead to a different conclusion with respect to Crash Reports.

Instead, Plaintiff argues that the reasoning of these cases "would render superfluous the requirement that resellers—which irrefutably maintain records outside a state DMV—comply with the permitted use restrictions under subsection (b)."  Opp. at 10.  This is not what *Andrews*, *Fontanez*, or *Siegler* held.  Those Courts of Appeals opinions properly analyze whether a record is a "motor vehicle record" by addressing whether the record is maintained by the state DMV ***before any disclosure to an authorized recipient***.  *See Siegler*, 519 F.App'x at 605 ("[DPPA] is concerned only with information ***disclosed***, ***in the first instance***, by state DMVs." (emphasis supplied)); *Andrews*, 932 F.3d at 1260 (holding specific to "***initial source***" (emphasis supplied)).  The *Siegler* Court uses the word "originating" to describe a record maintained by a DMV prior to disclosure to an authorized recipient, 519 F.App'x at 605, which Plaintiff unhelpfully and inaccurately equates with records "created by" a DMV.  *See* Opp. at 9.

In any event, the holdings of *Andrews*, *Siegler*, and *Fontanez* do not disturb the DPPA's restriction on resale or redisclosure of personal information in § 2721(c).  If a record is maintained by a DMV, that record is a motor vehicle record, and a reseller may only redisclose personal information from that motor vehicle record consistent with § 2721(c).  Plaintiff's Complaint should be dismissed, among other reasons, because the Crash Report is allegedly maintained and disclosed by law enforcement, not the MVA.  *See* Compl. ¶¶ 21–22.

In the face of three Courts of Appeals decisions foreclosing Plaintiff's theory, Plaintiff holds up two district court decisions which erroneously conclude that North Carolina (not Maryland) Crash Reports are "motor vehicle records."  *See* Opp. at 6 (citing *Gaston*; *Durham v. City of Charlotte*, No. 3:21-cv-00638, 2024 WL 4279513 (W.D.N.C. Sept. 24, 2024)).  Neither

- 14 -

decision addresses the meaning of "record" under the Privacy Act, nor even mentions the three on-point Courts of Appeals cases.  Moreover, both *Gaston* and *Durham* concluded that a Crash Report was a motor vehicle record under the theory that information was protected "[r]egardless of . . . the initial source of the address information" that matched address information on a driver's license.  *See Gaston*, 483 F.Supp.3d at 336–37; *Durham*, 2024 WL 4279513, at *18 (adopting *Gaston* reasoning after noting that the Fourth Circuit did not reach the question of the definition of a motor vehicle record).  As explained in the Motion, this theory was rejected by the Fourth Circuit in *Garey*.  *See* Mot. Mem. at 15–16; *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 926 (4th Cir. 2022).  Plaintiff's only response is to say that *Durham* was decided after, and cited, *Garey*; there is no dispute that *Durham* adopted the flawed reasoning of *Gaston*.  *See* Opp. at 6 n.2.

Lastly, Plaintiff contends that because Maryland's FOIA-equivalent law defines "record" to include Crash Reports and "custodian" to include all state agencies, that this somehow supports Plaintiff's interpretation of the meaning of "record" under the DPPA.[6]  *See* Opp. at 10–12.  This argument is entirely misplaced.  The manner in which Maryland defines its state public records law (not even its driver privacy law) has nothing to do with how Congress wrote the DPPA or how it should be interpreted.  *See Mattivi*, 2002 WL 31949898, at *3 ("interpretation of the DPPA is a matter of federal law, and Colorado's statutory scheme is not controlling").

Because Plaintiff's Crash Report is not a "motor vehicle record" under the DPPA, this Court should dismiss the Complaint with prejudice.  *See, e.g.*, *Fontanez*, 563 F.App'x at 849.

## III.    <u>CONCLUSION</u>

For the foregoing reasons and those in the Motion, Defendant CARFAX, Inc. respectfully requests that the Court dismiss the entirety of the Complaint with prejudice.

---

[6] Maryland's Public Information Act and the sections of COMAR cited by Plaintiff pre-date the decisions in *Andrews*, *Siegler*, and *Fontanez* interpreting "motor vehicle record" under the DPPA.

Respectfully submitted this 6th day of June, 2025.

                                **SQUIRE PATTON BOGGS (US) LLP**

                                By: */s/ John A. Burlingame*

                                John A. Burlingame (Bar No. 15456)
                                john.burlingame@squirepb.com
                                2550 M Street NW
                                Washington, DC 20037
                                Telephone: +1 202 626 6871
                                Facsimile: +1 202 457 6315

                                Kristin L. Bryan (admitted *pro hac vice*)
                                kristin.bryan@squirepb.com
                                1000 Key Tower
                                127 Public Square
                                Cleveland, OH 44114
                                Telephone: +1 216 479 8070
                                Facsimile: +1 216 479 8780

                                *Attorneys for Defendant*
                                *CARFAX, Inc.*