**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **BENJAMIN LUCAS,** | |
| *Plaintiff*, | |
| v. | **Civil No.: 8:25-cv-00632-JRR** |
| **CARFAX, INC.,** | |
| *Defendant*. | |

**MEMORANDUM OPINION**

Pending before the court is Defendant CARFAX, Inc.'s Motion to Dismiss. (ECF No. 10; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be denied.

## I.    BACKGROUND[1]

Plaintiff Benjamin Lucas brings the instant action against Defendant on behalf of himself and others similarly situated for violations of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (the "DPPA"). (ECF No. 1 ¶ 1.)

### A.  About Defendant

Defendant "is in the business of collecting and selling data from more than 139,000 sources, including the Department of Motor Vehicles ('DMV') for every U.S. state and the District of Columbia, as well as more than 5,000 police departments across the country." (ECF No. 1 ¶ 2.) It "collects, markets, and sells not only vehicle history data, but also police reports relating to motor vehicle accidents" by maintaining, marketing, and selling "access to a national database of more than 1.5 million police reports that contain 'personal information' derived from 'motor

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

vehicle records' (as such terms are defined under the DPPA), which reports are available to purchase from Carfax through various websites." *Id.*

**B.  Plaintiff's Motor Vehicle Accident and Resulting Crash Report**

On December 4, 2023, Plaintiff was involved in a motor vehicle accident.  (ECF No. 1 ¶ 20.)  The investigating law enforcement agency "utilized Plaintiff's driver's license and vehicle registration . . . to collect information including Plaintiff's driver identification number and residential address (which are 'personal information' under the DPPA)."  *Id.* ¶ 21.  The law enforcement agency "transmitted the collected information to the MVA for the purpose of creating a Crash Report," which contained Plaintiff's personal information (the "Crash Report").  *Id.*  MVA then transmitted the Crash Report back to the law enforcement agency.  *Id.*  At issue here, the Crash Report contains information about the accident, as well as Plaintiff's vehicle registration number, name, driver's license number, address, phone number, and date of birth.  (ECF No. 16-2.)  Plaintiff alleges that his driver's license, vehicle registration, and the Crash Report are motor vehicle records under the DPPA.  (ECF No. 1 ¶¶ 21–28.)

Upon Plaintiff's information and belief, Defendant 1) "knowingly purchased the Crash Report about Plaintiff's accident from the investigating officer's law enforcement agency and . . . sold the Crash Report and its contents to third parties within the last four years, without Plaintiff's consent and without ascertaining whether the third-party purchasers were permitted under the DPPA to possess the personal information therein," and in a manner not permitted under the DPPA; 2) "has sold the Crash Report about Plaintiff's accident to purchasers that were not permitted under the DPPA to possess the personal information therein"; and 3) "failed to make a reasonable inquiry as to whether the Crash Report about Plaintiff's accident would be used by third-party purchasers only for an authorized purpose under the DPPA."  (ECF No. 1 ¶¶ 22–24.)

Plaintiff initiated this class action on February 25, 2025.  (ECF No. 1.)  He brings one count—violation of the DPPA, 18 U.S.C. § 2821, *et seq.  Id.* ¶¶ 38–50.  He contends that Defendant violated the DPPA by obtaining motor vehicle records containing Plaintiff's (and class members') personal information and/or disclosing same for commercial gain.  *Id.* ¶¶ 43–44.  On April 11, 2025, Defendant filed the instant Motion to dismiss Plaintiff's Complaint.  (ECF No. 10.)

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint."  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'"  *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible."  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570).  The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully."  *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d

3

186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.  *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint.  The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity."  *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021).  "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  The court is entitled to "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" as part of the "pleading for all purposes."  *Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); then citing FED. R. CIV. P. 10(c)); FED. R. CIV. P. 10(c) (pertaining to "written instruments" attached as exhibits to a pleading).  Finally, the court may also "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts,'" meaning a fact "not subject to reasonable dispute because it," *inter alia*, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); FED. R. EVID. 201(b).  In accordance with the foregoing, in ruling on the Motion, the court takes judicial notice of the Crash Report, which Plaintiff attaches to his opposition.[2]

---

[2] Defendant does not dispute that the court may consider the Crash Report in ruling on the Motion based on the above-cited authority, but urges that Plaintiff may not amend his Complaint by attaching the Crash Report to his opposition.

III.    **ANALYSIS**

"The DPPA regulates the disclosure and resale of personal information contained in the records of state DMVs." *Reno v. Condon*, 528 U.S. 141, 143 (2000). Congress enacted the DPPA in response to "at least two concerns over the personal information contained in state motor vehicle records"—first, "a growing threat from stalkers and criminals who could acquire personal information from state DMVs," and second, a "concern related to the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Maracich v. Spears*, 570 U.S. 48, 57 (2013). The DPPA "establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." *Condon*, 528 U.S. at 144.

While the first part of the DPPA "expressly focuses on a state's own records," the second part "concerns not DMVs themselves, but instead those who illicitly seek information from motor vehicle records." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1258 (9th Cir. 2019). Specifically, the DPPA provides: "It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). A private cause of action exists "against '[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record,' for an impermissible purpose." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 920 (4th Cir. 2022) (quoting 18 U.S.C. § 2724(a)). This "means what it says: a DPPA plaintiff must allege and prove that the defendant obtained the plaintiff's personal information '*from* a motor vehicle record.'" *Id.* at 929 (emphasis in original) (quoting 18 U.S.C. § 2724(a)).

---

Defendant is correct that a party may not amend its pleading by way of an opposition to a motion to dismiss, but the court disagrees with Defendant's suggestion that Plaintiff seeks to do that here. Plaintiff's Complaint alleges the Crash Report contains his personal information within the meaning of the DPPA. The Crash Report itself simply confirms that allegation; its service as an exhibit to Plaintiff's opposition does amend the Complaint.

The DPPA defines "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," and "personal information" as "information that identifies an individual," such as driver identification number, name, address and telephone number. 18 U.S.C. § 2725(1), (3). "Personal information" does not include "information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3).

"The DPPA's disclosure ban is subject to 14 exceptions set forth in § 2721(b), for which personal information 'may be disclosed.'" *Maracich v. Spears*, 570 U.S. 48, 57–58 (2013). These exceptions include, relevant here:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> (2) For use in connection with matters of motor vehicle or driver safety and theft . . . .
>
> .          .          .
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency . . .
>
> .          .          .
>
> (14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2721(b)(1)–(2), (4), (14). "An authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection (b)," meaning one of the above-enumerated exceptions. *Id.* § 2721(c).

Based on the foregoing, to prevail in his claim for violation of the DPPA, Plaintiff must ultimately show that (1) Defendant knowingly obtained or disclosed Plaintiff's personal

information, as defined under the DPPA, (2) from a motor vehicle record, as defined under the DPPA, (3) for an impermissible purpose.  *See* 18 U.S.C. § 2722(a); *Andrews*, 932 F.3d at 1259; *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010).

### A. Knowingly Obtaining or Disclosing Information from a Motor Vehicle Record

On the first two elements, Defendant urges that Plaintiff's claim fails as a matter of law for two reasons: first, the Fourth Circuit's decision in *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022), forecloses "any DPPA liability based on Plaintiff's license and registration"; and second, the Crash Report at issue is not a motor vehicle record under the DPPA as a matter of law because it was not obtained directly from a DMV.  *Id.*[3]

### 1. *Obtaining or Disclosing Information from Plaintiff's License and Registration*

As mentioned above, Defendant urges that *Garey v. James S. Farrin, P.C.* forecloses Plaintiff's theory that it obtained or disclosed information from Plaintiff's driver's license and registration.[4]  The court agrees.

---

[3] Defendant offers much in the way of purported legislative intent for the court's consideration of this (and other) issues.  On the court's task in conducting statutory analysis, the Fourth Circuit has recently reiterated:

> When conducting statutory analysis, we must first determine whether the meaning of the statute is ascertainable through the text alone. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (citing *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)).

*Valladares v. Ray*, 130 F.4th 74, 80–81 (4th Cir. 2025).  Only where the court "determine[s] that the terms of a statutory provision are ambiguous" is it then "permitted to consider other evidence to interpret the meaning of the provision, including the legislative history." *United States v. Hatcher*, 560 F.3d 222, 226 (4th Cir. 2009).  Defendant has not mounted argument that the DPPA provisions at issue are ambiguous.  The court declines to consider evidence of sources of legislative intent where the meaning of the statute is ascertainable by merely reading it.

[4] As a cursory (and conclusory) aside, Defendant offers that Plaintiff's driver's license and registration are not motor vehicle records for the same reasons the Crash Report is not.  Defendant fails to advance substantive argument on this point.  The court constrains its analysis to issues and arguments properly briefed, especially given the Fourth Circuit's acknowledgment that "[c]ourts are divided on this question." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 925 (4th Cir. 2022).

The allegations in *Garey* stemmed from accident reports that were created by law enforcement agencies under North Carolina law; the reports contained information, including, relevant here, "the names and home addresses of the drivers." *Id.* at 920. The accident reports were stored with the law enforcement agencies, and, plaintiffs alleged, "some private data brokers obtain and sell these accident reports." *Id.* The *Garey* plaintiffs alleged that defendants—attorneys seeking to represent people involved in car accidents—"obtained accident reports from North Carolina law enforcement agencies or private data brokers and used the names and addresses on the reports to mail unsolicited attorney advertising materials to the drivers involved in those crashes," purportedly in violation of the DPPA. *Id.* On appeal, the Fourth Circuit noted that the parties sought "to present several complex questions of first impression in this Circuit, including whether a driver's license is a 'motor vehicle record,'" and "whether the DPPA applies to records outside the possession of a state DMV." *Id.* at 924. It left those questions unanswered, instead concluding that the case was "more easily resolved on the basis of a simpler statutory term found in § 2724(a), *i.e.*, 'from.'" *Id.* at 925.

The Fourth Circuit did not resolve the question whether an accident report is a motor vehicle record under the DPPA, but it did consider whether a DPPA violation could be found where the defendants obtained and used accident report information sourced from driver's licenses. *Id.* at 925–26. The Fourth Circuit's answered in the negative:

> The phrase "obtain, disclose or use personal information, from a motor vehicle record" is most naturally read to refer to a defendant who obtains such information directly "*from* a motor vehicle record" (or a defendant who uses or discloses that information once so obtained), not a defendant who obtains information that, at some point in time, appeared in a motor vehicle record.
>
> This case might be different if Congress had said what the Plaintiffs assert Congress meant, *i.e.*, that the DPPA protects personal information *derived* from a motor vehicle record, even if a defendant

did not retrieve the information directly from such a record. But Congress did not enact such a law. In fact, confirming what the plain text says, Congress considered *and rejected* a version of the statute that would have done exactly what the Plaintiffs believe Congress meant to do.

*Id.* at 926.   After noting that legislative history supports its analysis, it continued:

> In light of this history, we must disagree with those courts that have held that if a piece of personal information can be traced back to a motor vehicle record, "the DPPA protects the information throughout its travels." *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004, 1007 (N.D. Ill. 2015) (quoting *Whitaker v. Appriss, Inc.*, 2014 WL 4536559, *4 (N.D. Ind. Sept. 11, 2014)); *see also Wilcox*, 360 F. Supp. 3d at 1146. If that were the case, why delete "derived"? We cannot simply assume that Congress made this change for no particular reason. To the contrary, "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442–43, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 392–93, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) (Stewart, J., dissenting)); *see also Muniz v. Hoffman*, 422 U.S. 454, 468, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975) (explaining that statutory text "may not be read isolated from its legislative history and the revision process from which it emerged, all of which place definite limitations on the latitude we have in construing it.").

*Id.* at 926–27 (footnote omitted).  Thus, "the DPPA imposes civil liability only on a defendant who obtains personal information *from* a motor vehicle record, but not on a defendant who merely obtains personal information that can be linked back to (*i.e.*, derived from) such a record."  *Id.* at 927 (emphasis in original).

The allegations here are clear: the law enforcement agency "utilized Plaintiff's driver's license and vehicle registration . . . to collect information including Plaintiff's driver identification number and residential address," and then transmitted this information to the DMV to create the Crash Report; the Crash Report was then transmitted back to the law enforcement agency and then purchased by Defendant.  (ECF No. 1 ¶ 21.)  As in *Garey*, Plaintiff does not allege Defendant

obtained information directly from his driver's license and registration, but rather that Defendant obtained information that came from (was derived from) his driver's license (and registration) and was included in the Crash Report. *Garey* is controlling on this issue. Accordingly, to the extent Plaintiff's claim is based on the theory that Defendant obtained and/or disclosed personal information derived from Plaintiff's driver's license and registration, the claim fails.[5]

### 2. Crash Report as a Motor Vehicle Record

Defendant further contends that, to the extent Plaintiff's DPPA claim rests on the asserted Crash Report as a motor vehicle record, his claim fails as a matter of law because the Crash Report is not obtained directly from a DMV. Notably, as said, the Fourth Circuit did not reach this question in *Garey*. *See*, 35 F.4th at 928 (noting "[w]e need not and do not reach this question, because the Plaintiffs have failed to preserve this argument").

In support of its argument, Defendant points to three courts of appeals decisions. *See Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019); *Fontanez v. Skepple*, 563 F. App'x 847 (2d Cir. 2014); *Siegler v. Best Buy Co. of Minnesota*, 519 F. App'x 604 (11th Cir. 2013). In each of these cases, the alleged DPPA violation arose from defendants allegedly obtaining personal information when the plaintiffs voluntarily provided their driver's licenses (and a DMV form in one case) to the defendant (or an employee thereof) or an entity that then provided the information to a defendant. *See Andrews*, 932 F.3d at 1259 (regarding a man who provided his driver's license to a car dealership, which then recorded the information in its dealer management system, a system accessible to the defendant); *Fontanez*, 563 F. App'x at 848 (regarding a woman who provided her driver's license at the local jail where defendant was a correctional officer as proof of identity to visit her boyfriend); *Siegler*, 519 F. App'x at 604

---

[5] Because Plaintiff's claim will proceed notwithstanding this conclusion, the court will deny the Motion but prohibit Plaintiff from proceeding on this theory of liability.

(regarding a woman who provided her driver's license to complete a return of a computer mouse from Best Buy).  The court is not persuaded on the current record that these decisions, none of which is binding on this court, foreclose Plaintiff's claim that the Crash Report is a motor vehicle record.

First, Plaintiff contends the motor vehicle record here is the Crash Report—a document he alleges is created by, and originates with, the DMV, and which is then provided to the law enforcement agency.  The allegations here do not present a circumstance "where . . . the initial source of personal information," meaning the Crash Report, "is a record in the possession of an individual, rather than a state DMV." *Andrews*, 932 F.3d at 1260; *see Fontanez*, 563 F. App'x at 849 (explaining the plaintiff's "personal information was not obtained from a search of DMV records by a DMV employee or authorized DMV reseller," but rather "a corrections officer obtained the personal information from her driver's license that she had provided as proof of identity and then used that information to find her telephone number in the [jail's] computer database"); *Siegler*, 519 F. App'x at 605 (explaining "[a] plain reading of the DPPA makes clear that [it] was intended to prohibit only the disclosure or redisclosure of information *originating* from state department of motor vehicles [] records" (emphasis in original)).  Unlike in these cases, Plaintiff does not allege that he maintains the document in his possession or that he voluntarily provided it to Defendant.  Instead, Plaintiff alleges the Crash Report is a form generated by the DMV and provided to the law enforcement agency.

Second, as the parties acknowledge, this court's sister court, the Western District of North Carolina, has concluded that accident reports (like the one at issue here) are motor vehicle records under the DPPA.  *See, e.g.*, *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 336–37 (W.D.N.C. 2020) (finding that crash reports created by law enforcement from a standard form

11

promulgated by the state DMV using driver's licenses and registration where motor vehicle records under the DPPA); *Durham v. City of Charlotte*, No. 3:21-CV-00638-RJC-DSC, 2024 WL 4279513, at *18 (W.D.N.C. Sept. 24, 2024) (finding similarly). *Cf. McClatchy Co. v. Town of Chapel Hill, N. Carolina*, 657 F. Supp. 3d 769, 778–79 (M.D.N.C. 2023) (concluding "the elements of personal information obtained directly from the [DMV database] that remain in each accident report are subject to the DPPA's protection"). At the same time, other courts outside of this circuit have held differently. *See, e.g.*, *Whitaker v. Appriss, Inc.*, 266 F. Supp. 3d 1103, 1107–08 (N.D. Ind. 2017), *dismissed,* No. 17-2679, 2017 WL 7689606 (7th Cir. Nov. 8, 2017) (noting an "accident report itself isn't a motor vehicle record, but 'disclosure of personal information that was obtained by and from the department of motor vehicles may nonetheless violate the DPPA," with the "decisive factor" being "how the police officer who created the accident report obtained the driver's license and vehicle title information—from the plaintiffs themselves or from the state department of motor vehicles") (quoting *Mattivi v. Russell*, No. Civ.A. 01-WM-533(BNB), 2002 WL 31949898 (D. Colo. Aug. 2, 2002)); *Mattivi*, 2002 WL 31949898, at *4 (concluding accident report was not a motor vehicle record under the DPPA).

Contrary to Defendant's contention, *see* ECF No. 17 at p. 2, the caselaw is far from "clear" here. Indeed, the Fourth Circuit describes this as a "difficult question":

> The Plaintiffs have one final theory as to the identity of the "motor vehicle record" in this case "from" which the Defendants obtained personal information: the accident report itself. This presents a difficult question. On the one hand, there is a non-frivolous textual argument that an accident report is a "record that pertains to a motor vehicle operator's permit," because the report indicates whether a driver's address is the same as that shown on their license. § 2725(1). Indeed, a district court in our circuit recently held that the exact same kind of accident report at issue here is a "motor vehicle record" within the meaning of the DPPA. *See Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 336–37 (W.D.N.C. 2020). On the other hand, several courts have limited a DPPA "motor vehicle

12

record" to those documents held by a state DMV, which would exclude the accident reports in question. *See, e.g., Andrews*, 932 F.3d at 1259–60; *Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014) (unpublished) (summary order); *Siegler v. Best Buy Co. of Minn., Inc.*, 519 F. App'x 604, 605 (11th Cir. 2013) (unpublished) (per curiam).

*Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 927–28 (4th Cir. 2022).

Defendant's argument is well-taken and surely raises serious questions (if not doubts) about Plaintiff's ability to succeed in his claim, but the court is not persuaded (especially on a Rule 12(b)(6) motion) that the cited caselaw supports dismissal of Plaintiff's claim in this circuit. *Cf. Hatch v. LexisNexis Risk Sols., Inc.*, No. 319CV00449KDBDCK, 2020 WL 1042256, at *4 (W.D.N.C. Mar. 3, 2020) (noting "because the particular facts underlying the preparation of an accident report may be critical in determining DPPA liability, many courts that have ruled on the issue have done so on a motion for summary judgment rather than on a motion to dismiss") (citing cases). Defendant does not meet its burden to show dismissal is warranted.

### B. Impermissible Purpose

The court turns next to Defendant's challenges to Plaintiff's allegation that Defendant lacked a permissible purpose when it obtained, and subsequently sold, the Crash Report. Defendant urges that Plaintiff's allegations on this point fail because Plaintiff does not plausibly allege that Defendant "disclosed 'personal information' to a third party that did not have a permissible purpose under Section 2721(b)."[6]  (ECF No. 10-1 at p. 19.)

---

[6] Because the court concludes Plaintiff's allegations that Defendant obtained or disclosed information with an impermissible purpose are sufficient, it does not address Defendant's argument that its distribution is permissible under § 2721(b)(14) of the DPPA because Maryland law requires the dissemination of information about motor vehicle accidents. (ECF No. 10-1 at pp. 16–17, citing MD. CODE ANN., PUB. SAFETY § 2-306(a).)  In any event, the court agrees with Plaintiff that Defendant's argument improperly relies upon matters outside of the pleadings, including, *e.g.*, Defendant's contention that it contracts with Maryland law enforcement agencies per the Public Safety statute. Further, as Plaintiff notes, and as the court discusses *infra*, this cited Maryland statutory provision requires the collection, analysis, and dissemination of "information about the occurrence of motor vehicle accidents" in Maryland, and does not specifically refer to accident reports, like the Crash Report, or personal information contained therein. *See* MD. CODE ANN., PUB. SAFETY § 2-306(a).

13

To be sure, "[u]nder the pleading standard the Supreme Court of the United States articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36 (D. Md. 2020), *aff'd*, 855 F. App'x 156 (4th Cir. 2021) (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009)). But this standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief where the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"[7] *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014) (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010)); *see Jones-McDaniel v. Bd. of Educ. of Montgomery Cnty.*, No. CV DKC 24-3075, 2025 WL 2494345, at *4 (D. Md. Aug. 29, 2025) (discussing same). Still, even in this circumstance, "conclusory pleading is not permitted." *Jones-McDaniel*, 2025 WL 2494345, at *4. A plaintiff "must include substantive facts in support of that belief." *Id.*

Of the alleged violation, Plaintiff states:

> 22. Carfax knowingly purchased the Crash Report about Plaintiff's accident from the investigating officer's law enforcement agency and, upon information and belief, sold the Crash Report and its contents to third parties within the last four years, without Plaintiff's consent and without ascertaining whether the third-party purchasers were permitted under the DPPA to possess the personal information therein.

> 23. Upon information and belief, Carfax has sold the Crash Report about Plaintiff's accident to purchasers that were not permitted under the DPPA to possess the personal information therein.

---

[7] Defendant curiously contends this information is not "peculiarly" within its possession or control because "facts about CARFAX's process are available to anyone who visits a website and attempts to purchase a Crash Report." (ECF No. 17 at p. 9.) This mistakes the point. Plaintiff does not allege that Defendant's "process" is peculiarly within Defendant's control, but rather, that Defendant's business practices with regard to his specific Crash Report, including to whom it was provided and any investigation as to same, is within Defendant's possession and subject to its control.

14

24. Upon information and belief, Carfax failed to make a reasonable inquiry as to whether the Crash Report about Plaintiff's accident would be used by third-party purchasers only for an authorized purpose under the DPPA. Based on such failure, Carfax breached its duty as a reseller under the DPPA to exercise reasonable care in responding to requests to purchase personal information derived from motor vehicle records.

(ECF No. 1 ¶¶ 22–24.)  These allegations are not read in isolation; instead, they are read against the backdrop of Defendant's business model and practices:

2. Carfax is in the business of collecting and selling data from more than 139,000 sources, including the Department of Motor Vehicles ("DMV") for every U.S. state and the District of Columbia, as well as more than 5,000 police departments across the country. Carfax collects, markets, and sells not only vehicle history data, but also police reports relating to motor vehicle accidents. Specifically, Carfax maintains, markets, and sells access to a national database of more than 1.5 million police reports that contain "personal information" derived from "motor vehicle records" (as such terms are defined under the DPPA), which reports are available to purchase from Carfax through various websites, including but not limited to www.crashdocs.org and www.CarfaxForClaims.com.

3. Carfax sells, discloses, or otherwise makes available the police accident reports containing information protected from disclosure under the DPPA (the "Crash Reports") to third parties, without the consent of the individuals whose protected information is contained in the Crash Reports (including Plaintiff), and without ascertaining (or making a reasonable effort to ascertain) whether the third-party purchasers are permitted to possess the protected information therein under the DPPA.

*Id.* ¶¶ 2–3.

While Plaintiff's allegations on this point could certainly be more robust, the allegations, taken together, are sufficient to raise a plausible inference of an impermissible purpose "where the facts are peculiarly within the possession of the defendant," *Malibu Media*, 2014 WL 7188822, at *4, and Plaintiff alleges "substantive facts in support of [his] belief," *Jones-McDaniel*, 2025 WL 2494345, at *4.  The court will deny the Motion on that basis.

15

C. **Disclosure of Personal Information**

Defendant's final challenge is that Plaintiff does not, and cannot, plausibly allege Defendant disclosed personal information under the DPPA. (ECF No. 10-1 at pp. 19–20.) This is not persuasive. Plaintiff alleges that the Crash Report contained his personal information under the DPPA including (at least) his driver identification number and residential address. (ECF No. 1 ¶¶ 21–23.) Further, the redacted Crash Report itself shows inclusion of the owner's name, address, phone number, driver's license number, and date of birth. (ECF No. 16-2.) Such information plainly includes "personal information" as defined by the DPPA. 18 U.S.C. § 2725(1), (3). Plaintiff sufficiently pleads this aspect of his claim.

Separate from sufficiency of the allegations, Defendant also urges that such information, even if included in the Crash Report, is not personal information under the DPPA as a matter of law because the DPPA expressly excludes "information on vehicular accidents" from its scope. *Id.* § 2725(3). The court appreciates Defendant's argument and that courts have reached different conclusions on this question. On the record before it at this stage of the case, however, the court agrees with the Middle District of North Carolina:

> Under the DPPA, "personal information" includes "information that identifies an individual, including an individual's . . . name [and] address . . . but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3). Based on its plain language defining the types of information protected under the statute, the Court finds that Plaintiffs' allegations that Defendants obtained and used their *names and addresses* for an impermissible use is sufficient to plausibly state a claim for relief under the DPPA. *See Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004, 1006 (N.D. Ill. 2015) (explaining that the DPPA "only excludes . . . information about the accident, not the personal information that is included in accident reports").

*Hatch v. Demayo*, No. 1:16CV925, 2017 WL 4357447, at *7 (M.D.N.C. Sept. 29, 2017), *opinion corrected on reconsideration*, 2018 WL 6003548 (M.D.N.C. Nov. 15, 2018), and *on*

16

*reconsideration in part*, 2020 WL 91873 (M.D.N.C. Jan. 8, 2020). Indeed, "the statute does not exclude accident reports from the definition of 'personal information'; it only excludes '*information on vehicular accidents [and] driving violations.*'" *Pavone v. L. Offs. of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004, 1006 (N.D. Ill. 2015)[8] (emphasis in original) (quoting 18 U.S.C. § 2725(3)). Thus, "[b]ased on the plain language of the statute, the exclusion refers to information about the accident, not the personal information that is included in accident reports." *Id.  But see Mattivi v. Russell*, No. CIV.A. 01-WM-533(BNB, 2002 WL 31949898, at *4 (D. Colo. Aug. 2, 2002) (concluding "the plain language of exception in section 2725(e) makes clear that Congress did not intend 'information on vehicular accidents' to be included within the Act's prohibition of disclosure of 'personal information'"). Defendant contends that such a reading would render the definition of personal information superfluous. (ECF No. 17 at p. 4.) Consistent with the reasoning discussed above, the court simply does not agree.

Based on the foregoing, the court will deny the Motion on that basis.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 10) will be denied. Defendant remains free to reassert its legal challenges on a full record at summary judgment.

March 23, 2026                                                        /S/

_____
Julie R. Rubin
United States District Judge

---

[8] The Fourth Circuit rejected the reasoning of *Pavone* on the separate matter of whether "the DPPA protects the information throughout its travels." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 926 (4th Cir. 2022) (quoting *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004, 1007 (N.D. Ill. 2015)).